Walter J. Hansen, Appellee, v. Henrici's, Inc., Appellant.

Gen. No. 42,503.

Opinion filed June 21, 1943.

ECKERT & PETERSON, of Chicago, for appellant; A. R. PETERSON, OWEN RALL and HAROLD W. HUFF, all of Chicago, of counsel.

THOMPSON, CHAMBERS & THOMPSON, of Chicago, and MATTHEWS, JORDAN & DEAN, of Aurora, for appellee; EVERETT JORDAN, of Aurora, and PERCIVAL E. THOMPSON, of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action brought to recover damages for personal injuries received by plaintiff on October 14, 1939, and on trial by jury, there was a verdict against defendant for the sum of $7,000. Motions of defendant for a new trial and for judgment notwithstanding were denied and judgment entered on the verdict.

For reversal error is contended in failing to direct a verdict for defendant at the close of all the evidence, in rulings of the court on the admission of evidence and in denying defendant's motion for a new trial.

Material facts are practically undisputed. Defendant conducted a restaurant at 71 West Randolph street in the city of Chicago. Entrance to it was from the south side of the street and by two doors. The first, immediately adjacent to the sidewalk, was a swinging

door. Just inside the swinging door was a space of about 5 feet leading to a vestibule in which was a revolving door. This door was about 7 feet in diameter by 7 feet 6 inches in heighth. It was a "Van Kannel, C type" door, built about 30 years ago. It weighed approximately 1,600 pounds. The revolving door had four panels of about equal size dividing the door into four equal compartments. The door was suspended from a ball bearing device in the ceiling and turned around a pivot dropped into a bronze bushing in the floor. The door was inclosed within circular walls. There was a rail across each panel. By placing the hand on this rail the door was set moving and going. At the top of each panel and on the side and at the bottom were rubber and felt flanges, all of which were removable. As the door revolved the flanges contacted the floor, side walls and ceiling.

Plaintiff lived in Aurora. He was 79 years of age. On the day of the accident he had come to Chicago with members of his family. They separated with an agreement to meet at this restaurant about 6 p. m. The party consisted of plaintiff, his daughter, Mrs. Laura Miller, her husband, Mr. Charles G. Miller, and plaintiff's son Norbert. The daughter and her husband arrived first at the restaurant and waited outside until they saw plaintiff and his son approaching. They then entered the restaurant through the swinging and revolving doors and stood by the bakery counter. Plaintiff entered through the swinging door, then entered the second or revolving door. A preponderance of the evidence indicates his son Norbert followed just behind in another compartment of the same door. Two young men came through the swinging door and just as plaintiff was leaving the revolving door one of these gave it a push, causing it to move rapidly. One of the panels struck plaintiff, threw him to the floor and severely injured him.

The complaint was filed July 16, 1940. It alleges negligence of defendant in construction of the revolving door and in the manner in which it was maintained. Evidence tended to show flanges or strips at the bottom of the door were frayed; that there was a space of about an inch between the flanges and the floor; that the flanges or strips on the side of the door were bent and curved; that the door revolved very fast; that the flanges on the sides of the door did not touch the wall half way up from the floor. There was evidence tending to show at the bottom of the door there was a space of about 1/16th of an inch between the flanges and the floor. There were also witnesses who testified for defendant in substance that they had examined the door and did not see anything wrong with it, but evidence as to alleged negligence in the construction as well as maintenance of the door was conflicting.

We hold the court did not err in refusing to direct a verdict for defendant or in denying the motion of defendant for judgment notwithstanding the verdict. As to each motion the question was whether there was any evidence from which, considered with all just inferences favorable to plaintiff, the jury could reasonably return a verdict in favor of plaintiff. Defendant says there was no defect in the door and to that point cites *Buzzell v. R. H. White Co.*, 220 Mass. 129, 107 N. E. 385. The *Buzzell* case was tried on a stipulation of facts, among others that the purpose of the pieces of rubber and felt, called flanges, was to prevent the entrance of cold air into the building to which the door was an entrance. The case turned on that point. In the later case of *Norton v. Chandler & Co.*, 221 Mass. 99, where it appeared the purpose of the rubber strips was not only to shut out the cold air but to retard the speed of the revolving door, defendant was held liable. The evidence here indicates the strips on

the door were placed there for both purposes. From the evidence the jury could reasonably find that the door (either through fault of construction or maintenance) was in a condition in which it revolved around the pivot unretarded by friction tending to lessen its speed. The jury could reasonably find the door defective in this respect.

A closer question arises through defendant's contention that, assuming a defect in the door, it was not, on the uncontradicted evidence, the proximate cause of plaintiff's injury. The evidence tends to show the immediate cause of the rapidity with which the door moved was a push on one of the bars by one or the other of the two young men who were going into the restaurant, following the plaintiff and his son. Defendant cites *Wiedanz v. May Department Stores Co.* (Mo.), 156 S. W. (2d) 44, which is a similar case, held the defect of the door was not the proximate cause. The Massachusetts cases above cited are all to the contrary on this phase of the case. To these may be added *Norsiff v. Worchester County Institute for Savings,* 264 Mass. 228. Defendant invokes the rule announced in some cases that a defendant who does no more than create a condition which makes possible the happening of an accident is not liable because some third person, by an independent act, acting upon the condition created, brings about injury to another. Defendant cites *Klomp v. Chicago M. & St. P. Ry. Co.,* 210 Ill. App. 375; *Munsen v. Illinois Northern Utilities Co.,* 258 Ill. App. 438, and *Campion v. Chicago Landscape Co.,* 295 Ill. App. 225, 14 N. E. (2d) 879.

We much doubt whether the manifold problems arising out of the doctrine of proximate cause can be solved by any metaphysical formula or made easier to solve by changes of nomenclature. Whether we call the cause "proximate," "legal" or "direct" matters little. It matters much that legal liability for bringing to pass that which harms another should be placed on

the right person. Here, it seems facts recited show this plaintiff entirely free from any negligence tending to bring about his own injury. The young men who, in haste and hurry, gave the push to the door which put it in motion at a dangerous speed, were, of course, responsible. Whether the defendant in the construction and maintenance of this door was also at fault was, we hold, a question for the jury to decide. Defendant invited plaintiff to its restaurant. The business was managed and controlled by it. Upon it was the duty of seeing to it that the ways of ingress and egress to its place of business were reasonably safe. The evidence shows one of the purposes of the strips of rubber and felt was that by contact with the door at the floor, at the top and on the sides of the several compartments, any unusual and dangerous speed might be checked or prevented. The question of whether defendant performed that duty was for the jury. *Thomas v. Chicago Embossing Co.*, 307 Ill. 134, 139. We do not undertake to define the difference between "direct," "proximate" and "concurring" causes. It is sufficient to say the jury was justified in finding the injury plaintiff received was one which, in the exercise of care, defendant ought to have foreseen would probably occur.

In Restatement of Torts, section 447, is this statement.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so

acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.''

This rule of the Restatement has been approved often by this and the Supreme Court of this and other States. *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270, 170 N. E. 247; *Sullivan v. William Ohlhaver Co.,* 291 Ill. 359; *Anderson v. Karstens,* 218 Ill. App. 285; *Dabrowski v. Illinois Cent. R. Co.,* 303 Ill. App. 31, 24 N. E. (2d) 382; *Clark v. New York Hotel Statler Co.,* 223 App. Div. 237, 238; *Dunn v. First Nat. Bank of Portland,* 149 Ore. 97, 121.

Defendant also contends the court erred in excluding evidence offered in its behalf. This alleged error occurred in the examination of defendant's manager witness. Having stated that he had worked for the defendant for thirteen years (five of these as manager) the record shows:

''Q. In the event that there were any accidents that occurred because of the rapidity of the revolving doors, would that be called to your attention?

''A. Yes.

''Mr. Peterson: As manager . . .

''Mr. Thompson: I object.

''The Court: Yes, sustained.

''Mr. Peterson: I do not want to transgress the ruling of the court, but I want to put another question, another way.

''Q. During the five years you were manager, had you ever had any accident there to your knowledge, of anyone being injured by reason of the rapidity with which the doors operated?

''Mr. Thompson: I object to that question. '

''The Court: Sustained.

''Mr. Peterson: All right. Then you may cross examine.''

Defendant says these questions should have been permitted for the purpose of showing defendant did

not have notice or knowledge of any dangerous condition of the revolving door. Defendant cites *Wolczek v. Public Service Co. of Northern Ill.*, 342 Ill. 482, where a judgment for plaintiff was reversed because the court excluded evidence tending to show there had been no prior accident at a pole carrying an electric wire, on which a young boy climbed and was electrocuted. Other authorities cited are *Campion v. Chicago Landscape Co.*, 295 Ill. App. 225; 2 Jones Commentaries on Evidence, 1272, sec. 683; *Lewis v. Washington R. & E. Co.*, 285 Fed. 977. In the *Wolczek* case the evidence given before the question was asked tended to establish the fact that the pole, at the time of the injury to the boy, was substantially in the same condition as it had been during the entire period concerning which the witness was questioned. There was no such showing here, and there was no offer to prove any such fact. In the absence of such a showing, evidence of this kind would not be admissible. There was no evidence nor offer to produce evidence tending to show the revolving door, at the time plaintiff was injured, was in the same condition it was in the period covered by the testimony of the witness. The court did not err in excluding this evidence.

It is contended a new trial should have been granted because of prejudicial conduct of plaintiff's attorney. The facts of this case were very earnestly presented to the jury by respective counsel. The circumstances of the case required care to prevent much sympathy for plaintiff. He had been severely injured. He was an elderly man and was brought before the jury on an ambulance cot, from which he testified. The circumstances were unusual. The parties were represented by able and experienced counsel. The arguments to the jury have not been fully abstracted. Plaintiff has presented an additional abstract. We have taken time to read the arguments in full as preserved in the record.

Defendant argued on the theory plaintiff's case was built up by perjury. He asked: "Are you going to give them a premium for concocting that kind of a case? If you allow a dollar, you will say by your verdict: 'Yes, we do.' This is a very bold statement for me to make but I think we ought not to pussyfoot about this thing at all; I don't believe you would want me to pull any punches." Attorney for plaintiff, in his closing remarks, did not pull any punches either.

In a pre-trial deposition O'Toole, manager for the defendant, testified to the effect that the flanges on the door at the time of the accident were removed about six weeks afterwards and destroyed. On the trial he stated this was a mistake and, as a matter of fact, flanges were produced said to be the ones on the door at the time of the accident. An investigator for defendant had obtained written statements from Mr. and Mrs. Miller as to the circumstances under which the accident happened. Referring to their testimony the attorney for defendant said: "Did you see how they both squirmed and twisted to try and get out from under their statements?" Further he declared: "Why, it was the most contemptible thing that I think anybody ever tried to perpetrate on a jury." Attorney for plaintiff, referring to the change of testimony by the manager, said: "Then, when he swore to tell the truth he comes in here and takes it all back. Why? The answer is patent why he is doing it and I don't think there is any question that this is the worst trumped-up, framed defense that was ever presented to a jury anywhere." Again, referring to this matter, he said: "I will tell you what happened. Ten days before he came over there an order was entered in this court and Mr. Peterson wasn't in the case then. He was in, but he wasn't taking care of it. So he sent his assistant, Mr. Collins, his understudy, and Collins and O'Toole got together and decided what the story was going to be." At this point Mr. Peterson objected

stating that there wasn't a bit of evidence about Collins and O'Toole getting together and took exception to the remark as being highly prejudicial. The court said: "There is no such evidence. The jury will disregard that statement and all statements not borne out by the evidence."

Later in the argument, attorney for plaintiff said: "Now, when the great Peterson gets in the case, when payday is near, when they have to hand this man the money he has coming as the result of their negligence, what happens? That story isn't good enough for Peterson. So, we find Peterson up in Henrici's restaurant at six o'clock, not having his dinner, no, but working on Joseph White and God knows how many others." Again counsel for plaintiff said: "I subpoenaed records in this case. I had a subpoena served on Mr. O'Toole to bring in the records with reference to when it was, prior to this accident, that they put these rubber flanges on the door and I thought that was something we were entitled to know. O'Toole comes in and tells us that this corporation for which he is an employee does not have any records. Do you believe that? That they don't have any records as to when those flanges were changed prior to the . . . the only records they have there are in 1940? Maybe we should have gone to John R. Thompson, or maybe I should have subpoenaed the John R. Thompson Company's record because that is where he had to go when Mr. Peterson wanted them and he didn't have any trouble getting them." Further on attorney for plaintiff said: "I don't think those are the flanges. I don't think there is any question but that they have brought in a second set of flanges."

Later, attorney for plaintiff called attention to the fact the suit was for $10,000. He said: "Mr. Peterson has not argued the question of injuries here at all and the reason for that is to preclude me from talking about them at all. That is tantamount to a plea of

guilty. As far as the injuries went, there wasn't any answer to those injuries." For the second time Mr. Peterson objected and the court said: "Yes, the jury will disregard the statement that that is tantamount to a plea of guilty." Then to an inquiry by Mr. Thompson the court further said: "I am telling the jury that they must disregard your remark that not arguing about the injuries is a plea of guilty. That is not true." A little later Mr. Thompson said to the jury: "Well, he didn't argue it." As a matter of fact, that is true and it is also true on this appeal. There is no question in the case as to the extent of the injury nor is it argued that the amount allowed is excessive.

Summarizing the record it appears that twice attorney for plaintiff made remarks to which the attorney for the defendant objected. The objections were sustained by the court and the jury properly instructed with reference thereto. As a matter of fact, defendant proceeded on the theory that plaintiff's case was framed, and plaintiff argued the case on the theory that the defense was framed. In his closing remarks attorney for defendant said: "Bear with me for repeating this . . . it goes right to the gist of this thing, to the principle involved in this case, which is as big as the all outdoors. Both sides cannot be right. Someone is not telling the truth."

One of the functions of a jury is to decide issues of fact like this. There is nothing about this verdict to indicate this jury was prejudiced against either of the parties. The trial court well understood the situation. We think the court did not err in refusing to grant a new trial.

The judgment will be affirmed.

*Affirmed.*

O'Connor, J., concurs.

Mr. Justice McSurely participated in the decision of this case but passed away before the opinion was filed.