AUGUSTA SORENSON v. EMERY BIRD THAYER DRY GOODS COMPANY.—
187 S. W. (2d) 480.

Kansas City Court of Appeals. March 5, 1945.

1242

*Clay C. Rogers, Price Wickersham, Mosman, Rogers, Bell & Conrad* for appellant.

*James E. Burke, William K. Atwood, Madden, Freeman, Madden & Burke* for respondent.

CAVE, J.—This is a suit for damages for personal injuries alleged to have been caused by the negligent maintenance of a revolving door at an entrance to a department store operated by defendant in Kansas City. The cause was tried to a jury and plaintiff recovered a verdict and judgment for $5000. Defendant appeals.

The petition alleged that on the date of the accident plaintiff was entering defendant's store through revolving doors maintained by it; that each of the doors consisted of four sections; that the outer edge and the top and bottom of each section were equipped with rubber and felt wings, which, when properly adjusted and in proper condition, served as a brake coming in contact with the outside surface and other surfaces in such a manner as to regulate the speed of the doors when operated; that it was the custom and practice among the users of such doors to have said wings properly adjusted and thereby prevent a sudden, unexpected and unusual speed in the operation of the doors; that, on said date, while plaintiff was in the act of entering the store and part way through the door, another pedestrian attempted to pass out of the store and, in doing so, entered the compartment immediately in front of plaintiff and shoved against the door in the usual manner, and the speed thereof, through the negligence of defendant, was permitted or caused to be suddenly and unexpectedly increased to an

unusually rapid rate, thereby causing the part of the revolving door, which followed plaintiff, to strike her with great force and violence, knocking her to the floor of the store and causing serious injuries. That the wings were loose and worn and were not properly adjusted so that they would come into close contact with the outside surfaces and thereby provide a sufficient brake to prevent the speed of the door from being suddenly and unexpectedly increased; and that the defendant knew or should have known of such condition in time to have remedied it, but failed to do so.

The answer consisted of a general denial and a plea of contributory negligence, charging that plaintiff carelessly and negligently failed to use her eyes and senses and carelessly failed to hold onto the bar or hand rail of the door.

For convenience, the parties will be referred to as they were in the trial court, plaintiff and defendant.

Defendant (appellant) makes but one assignment of error; that the trial court erred in refusing to give its peremptory instruction in the nature of a demurrer at the close of plaintiff's testimony, because plaintiff failed to make a submissible case. The defendant offered no evidence.

The door was "an Atchison door," and was split in the center with four wings. The entire door was suspended from the top by a ball-bearing screw and had no attachment at the bottom other than a guide pin. The construction of the door was such as to make it necessary, for the safety of users, to provide some brake or retarding device; and that was one of the purposes of the rubber and felt wings referred to. In other words, the door had no other braking or retarding equipment.

At the time of her injuries plaintiff was 85 years of age, in good health, and active for a person of her years. On the day of the occurrence she was in the downtown business district shopping and intended to go into defendant's department store to make some purchases. She testified that as she approached the door there was no one ahead of her and the door was not moving when she got to it; that she walked into one of the compartments and placed her hand on the door and walked on in about two or three steps when she saw a lady coming out from the store and enter the compartment immediately in front of her. This lady put her hand on the rod "and my door that I hold to went twice as fast and knocked me down." The other lady was not running when she entered the door; and there is no evidence that she gave the door an unusual shove. All the plaintiff saw her do was to put her hand on the rod and the door immediately doubled its speed. Considering the position and angle of the compartments of the door and the location of the two women therein, it doubled its speed in less than a quarter turn.

A Mrs. Seidel was standing inside the store near the door, but did not see any of the occurrences until after the plaintiff had been knocked to the floor. She and others assisted plaintiff to the first aid station in defendant's store. She then returned and for a short time observed other persons passing in and out of the store through this door. She noticed that the rubber and felt strips on all four wings were *curled back* and *worn,* and "I noticed that the door spun around fast; . . ." that after a person passed through the door in a normal manner it would contniue to spin around two or three times. She then tested the door by passing through it herself and gave it an ordinary push, and when she got through it continued to "spin around three times."

There was evidence that the door had been in substantially the same condition for a period of several weeks prior to the time of plaintiff's injuries.

Mr. Curtis, a qualified expert, testiefid that the very fact that a door, such as this, revolves three times after ordinary use, indicates that the brake strips are ineffective and that they "would have to be curled back quite a bit; . . . "that the purpose of such strips is to serve as brakes and also warmth; that such strips do wear out and will curl back and that when such condition exists, the strips can be adjusted to serve their proper purpose, unless they are worn too much, in which case they are replaced; and that when a door of this type revolves three times after ordinary use, the brake strips are not serving the purpose for which they are designed.

Mr. Mack, a qualified expert, testified that he was familiar with the door in question, and stated that a door of this kind and type can be adjusted so that it will not make a complete turn after a person uses it in an ordinary manner; that when such a door is properly adjusted it can be moved by an average person "fairly easily."

From defendant's briefs and oral argument, we conclude it does not seriously question that plaintiff's evidence tends to prove the rubber and felt strips were *worn and curled* to such an extent that they did not adequately serve as brakes, and that the door would "spin fast" and continue to spin around two or three times after normal use. But whether defendant concedes that or not, we hold it to be so; and that such evidence warrants a finding of negligence on the part of defendant in allowing the door to fall into a defective condition through failure to adjust or replace the brake strips.

Defendant's principal assault on plaintiff's case is that the condition of the door was a mere *condition,* and that plaintiff's own evidence affirmatively proves the defective condition of the door was not the *proximate cause* of the injuries. In support of this contention it is argued that plaintiff's testimony proves certain specific facts and justifies certain inferences and conclusions to be drawn therefrom

which destroys her case. Defendant enumerates nine such facts and conclusions.

We will not set them out in full, but they are to the effect; that since there is no description of "the other woman" (who was in the door), it must be concluded that she was an "average person;" and that she would normally walk twice as fast as the plaintiff, who was an old woman; that since "the other woman" had hold of the control rod when she entered the door, *she continued to control the door as she went through it and at all times had control of it*; and that since the door was *controlled* by "the other woman" the condition of the brake strips had nothing to do with causing the accident which, (defendant says), occurred solely because "the other woman" walked faster than the plaintiff who walked "slow."

There is no evidence tending to describe "the other woman" and, therefore, no evidence from which we can assume she was an "average person." She may have been young or old—heavy or light of foot; quick or slow in her movements. But plaintiff's evidence does disclose that when "the other woman" *placed her hand on the rod* the door immediately doubled its speed and knocked plaintiff to the floor; that "the other woman" did not hurry through the door or give it an unusual or forceful push; and that the door doubled its speed in the space of less than a quarter-turn. When such testimony is considered in connection with the evidence that the braking equipment was defective and that the door would "spin around fast" and would continue "to spin three times" after a patron had used it in a normal way, certainly justifies the inference that "the other woman" was using the door in a normal way and that its accelerated speed was due to the lack of braking facilities and not necessarily to her walking gait. However, defendant says that since plaintiff's evidence shows that "the other woman" placed her hand on the *control rod* and *walked on out,* and that there being no evidence that when the door speeded up it *struck* "the other woman," it must be assumed that she, at all times, had control of the door, and that it was her rate of speed which caused the door to strike the plaintiff. There is no evidence whether the door did or did not *strike* "the other woman." We think defendant erroneously construes plaintiff's testimony to mean that she saw "the other woman" *walk on out* of the door and onto the sidewalk. When her testimony is considered as a whole, it cannot be so construed. She testified positively that when "the other woman" placed her hand on the rod, the door accelerated its speed and knocked her to the floor and she remembered nothing else. There is nothing to indicate she knew what happened to "the other woman."

But defendant says that Mr. Mack, the expert, testified that when the brakes of a revolving door are properly adjusted an *average person* can move the door "fairly easily;" and from this hypothesis it argues that since the petition alleges that "the other woman" *shoved against*

*the door in the usual manner,* it follows that even if the door had been properly adjusted "the other woman" would have walked through "fairly easily" and walking at a normal gate of an average person she would have walked "twice as fast as an 85 year old woman," therefore the accident would have happened anyway. If we were the triers of the facts and entitled to draw conclusions most favorable to defendant, the above argument would be potent and pertinent. But the only question before us is whether the demurrer should have been sustained because of failure of proof. In deciding that question, we are circumscribed by the well recognized rule that defendant's demurrer to plaintiff's evidence admits as true every fact and circumstance which plaintiff's evidence tends to prove; that plaintiff is entitled to the benefit of every inference of fact which may be reasonably drawn therefrom; that the evidence must be considered in the light most favorable to plaintiff; and that such a demurrer can be sustained only when the facts in evidence and the legitimate inferences to be drawn from such facts are so strongly against plaintiff as to leave no room for reasonable minds to differ. [Young v. Wheelock, 333 Mo. 992, 996.]

With this rule in mind, we are of the opinion that plaintiff's evidence proves or justifies reasonable inferences, that the brake strips on this door were defective and were not serving the purpose for which they were installed; and this was a negligent maintenance of the door; and that such condition had existed a sufficient length of time for defendant to be charged with knowledge thereof; that plaintiff was a business invitee and was using the door in a normal and prudent manner; that defendant must have known that the door would likely be used by more than one customer at the same time in entering or leaving its store; that "the other woman" was using the door in a normal and usual manner, and that the greatly accelerated speed was due to the defective braking conditions. At least the jury could so find. Such evidence and legitimate inferences justify the submission of the case to the jury. This conclusion is supported by Norton v. Chandler and Co. (Mass.), 108 N. E. 897; Nersiff v. Worcester County Institution (Mass.), 162 N. E. 349; Hochschild v. Cecil (Md.), 101 Atl. 700; Eyerly v. Baker (Md.), 178 Atl. 691.

Defendant cites the case of Wiedanz v. May Department Stores, 156 S. W. (2d) 44. This is an opinion by the St. Louis Court of Appeals which discusses a case growing out of an accident in a revolving door. But a careful reading of that opinion easily distinguishes it from this case. In the course of the opinion, the court said, (47): "There is no charge in the petition nor is there any evidence to show that there was any defect in the structure or the condition of the door in question." And in distinguishing that case from the Norton case, *supra,* the court said, (49): "There was evidence (in Norton case) that, at the time of the accident, the friction strips on the wings of

the door were worn down and were narrower and the contact was less than was usual with revolving doors. The case is not in point on the facts." It is quite clear the St. Louis Court of Appeals was discussing pleadings and facts substantially different from those in the instant case.

In the Norton and Eyerly cases, *supra,* the courts were discussing such similar issues and facts that we think it helpful to quote from each. In the Norton case a customer was injured by being struck by defendant's revolving door, the friction or brake strips of which had not been adjusted in three years and were observed to have been in less contact than usual with the door frame. The court held that the evidence warranted a finding of negligence. Moreover, the court held that evidence that a man entered another compartment of the door "in a hurry" at the time of plaintiff's injury, did not constitute proof of a break in causal connection, the court saying, (898) :

". . . If the action of this man who was going out was the immediate cause of the revolving door's spinning around and unexpectedly hitting the plaintiff in the back, the connection between the defendant's negligence and the accident to the plaintiff was not necessarily broken thereby. That a customer should go out through the revolving door in a hurry and so set it spinning was, or might have been found to be, something which the defendant ought reasonably to have anticipated. If that was so, or was found to be so, the connection between the two was not broken." (Supreme Court Mass.)

In the Eyerly case the Maryland court disposes of the question of negligence and proximate cause on a similar set of facts in this language, (695) :

"His (defendant's) store was near a public square in Hagerstown and it may be inferred was extensively patronized by the public. It was almost inevitable that frequently persons entering and leaving it would want to use the door at the same time, and that if it revolved too freely accidents might occur if persons going in opposite directions entered it at the same time. If only one person used it at a given time, the ease or freedom with which it revolved would be immaterial, because the person using it could control its speed. So that in weighing the condition and operation of the door as evidence of negligence, they must be considered in connection with the probability that the door might be used by two or more persons at the time under circumstances which might result in injury to them unless some device was used to control the speed of its revolution.

"Such a device was used on the door in this case, but the evidence referred to, *supra,* allows the inference that it was permitted to become worn and inadequate to control the speed of the door within safe limits. That evidence was that the door revolved 'very fast,' that it whirlel witness back into the store, 'that it went 'clear around as fast as it could go,' that it 'kept going around until it slacked up,'

that the 'rubber and felt edges' which acted as a brake were worn, and that when they were worn excessively their efficiency as brakes was impaired unless they were adjusted, and that the door swung 'very easy.' It is true that door was not put in motion by the plaintiff, but by another person attempting to enter the store. But the defendant should have anticipated that it might be so used, and that if permitted to revolve too freely might injure one attempting to use it to leave the store as another entered it. These facts afford some evidence of negligence in the management and maintenance of the door.''

Defendant seeks to distinguish the Norton and Eyerly cases by saying that, the evidence in those cases did not show that ''the other person'' had *control* of the door, while in the instant case, it contends, plaintiff affirmatively proved ''that the speed of the door was controlled by the plaintiff and 'the other woman.' '' As pointed out above, we do not agree that the evidence affirmatively shows any such situation. In its briefs defendant frequently refers to the fact that ''the other woman'' *grasped the control rod*. We find no such evidence. What plaintiff said was that ''the other woman *put her hand on the rod* and my door went twice as fast and knocked me down.'' This clearly indicates ''the other woman'' did not *control* the door by *grasping the rod*.

Defendant cites a number of cases discussing the law of proximate cause. That principle, as announced in McWhorter v. Dahl Chevrolet Co., 88 S. W. (2d) 204, is to the effect that mere proof of negligence and injury is not sufficient, there must be proof also from which a causal connection appears between such negligence and such injury and proof that such negligence is the proximate cause of the injury. But it is also true, as said by the Supreme Court in Cech v. Mallinekrodt, 20 S. W. (2d) 509, 515, that ''the plaintiff's evidence need not exclude a *possibility* of accident or of a cause for which defendant is not liable, but it is sufficient to make a submissible case if there is substantial evidence that the injury resulted from a cause for which defendant is liable.'' (Italics ours.) The question is well stated in Burt v. Nichols, 173 S. W. 681, 684, wherein the court said: ''We can readily appreciate a case wherein the facts themselves would show lack of proximate cause. . . . But we think that such condition ought ordinarily to appear from facts shown affirmatively, and not be deduced as inferences favorable to defendant only from a state of nonspeaking facts from which contrary inferences can just as well be drawn.'' In Settle v. Railway Co., 127 Mo. 336, the court again states the proposition, which is particularly applicable in this case. The court said, (341):

''It is undoubtedly true, as insisted by defendant's counsel, that in actions for damages on account of negligence, plaintiff is bound to prove, not only the negligence, but that it was the cause of the damages. This causal connection must be proved by evidence, as a fact, and

not be left to mere speculation and conjecture. This rule does not require, however, that there must be direct proof of the fact itself. This would often be. impossible. It will be sufficient if the facts proved are of such a nature, and are so connected and related to each other that the conclusion therefrom may be fairly inferred.''

From a careful reading of the record we conclude that, the facts and reasonable inferences to be drawn therefrom, afford sufficient evidence of negligence in the maintenance of the door, and that such negligence was the proximate cause of plaintiff's injuries. The court correctly ruled the demurrer. The judgment should be affirmed. It is so ordered. All concur.