## RUTHERFORD v. UNITED STATES.
### Civ. No. 3294.

United States District Court
D. Wyoming.

Oct. 16, 1950.

H. Glenn Kinsley and James Munro, Sheridan, Wyo., for plaintiff.

J. J. Hickey, U. S. Atty., and John S. Miller, Asst. U. S. Atty., of Cheyenne, Wyo., for defendant.

T. BLAKE KENNEDY, District Judge.

The plaintiff brings this action under Title 28, Sections 1346(b) and 2671 to 2680, inclusive, commonly known as the Federal Tort Claims Act. The claim is for damages alleged to have been sustained by plaintiff in the U. S. Post Office Building at Sheridan, Wyoming, growing out of an injury which took place in a revolving

door which is alleged to have been maintained in an unsafe and dangerous condition. Issue was joined by the defendant through an answer in which all claims of negligence were denied, contributory negligence alleged on the part of the plaintiff, and an additional defense that the injury was caused on account of a third party having caused the door to revolve rapidly and strike the plaintiff, thereby causing the injuries complained of.

The case was tried to the Court without the intervention of a jury in conformity with the provisions of the tort claims act at its Sheridan August Term, 1950. Owing to the fact that one of the witnesses for the defendant who had been subpoenaed was ill and could not attend, it was stipulated in order to avoid the possibility of a continuance of the trial that the deposition of said witness should be taken at a later date and submitted with the other evidence, upon the submission of which, the case would be taken under advisement by the Court and trial briefs submitted as to the law which should govern the case.

Upon examination of these trial briefs it appears that counsel have been eminently fair and industrious in their endeavor to enlighten the Court, as both briefs contain many citations of identical authorities. Evidently the laws concerning revolving doors in which accidents have occurred are not altogether in harmony but it seems to be the general trend of all the cases that each case must depend largely upon its own facts and circumstances and that such a case usually involves facts which should be submitted to the jury for determination.

The Court is advised that there are no revolving door cases which have been decided by the Wyoming courts. The general law concerning the relative duties of a storekeeper, which would be applicable to a defendant maintaining a post office, are said to be that a storekeeper is not an insurer of safety of a customer shopping in a store, but that in the relative position of invitor and invitee the law demands of the invitor the exercise of ordinary care under the attendant facts and circumstances.

Dudley v. Montgomery Ward & Co., 64 Wyo. 357, 192 P.2d 617.

Two interesting cases by the Supreme Judicial Court of Massachusetts are cited as Buzzell v. R. H. White Co., 220 Mass. 129, 107 N.E. 385, and Norton v. Chandler & Co., 221 Mass. 99, 108 N.E. 897. Both were revolving door cases. In the first case a directed verdict for the defendant was approved, and in the second case, submitted upon an agreed statement of facts, a verdict by the jury for plaintiff was approved. Curiously enough, the two opinions seem to have been written by the same judge. The difference in the cases, when analyzed, seems to have been that in the first case the evidence tended to prove that the strips placed upon the door were to prevent the passage of air but not to retard the swing of the door, while in the second case the proofs showed that the friction strips were placed there to control the speed of the door in its revolutions and that under these circumstances, as to whether these so-called strips were maintained in a proper condition, was a question of fact to be submitted to the jury. Therefore, when the jury had spoken on the alleged negligence of the type alleged it was within their function and to be approved by the Court. At page 898 of 221 Mass., at page 898 of 108 N.E. in the second case the Court analyzes the situation in this interesting manner: "There was evidence that as the plaintiff was going through the revolving door into the store a man was going out of the store through the revolving door, on the other side of it; that the man was in a hurry, and 'went out just like anybody that is in a hurry.' If the action of this man who was going out was the immediate cause of the revolving door's spinning around and unexpectedly hitting plaintiff in the back, the connection between the defendant's negligence and the accident to the plaintiff was not necessarily broken thereby. That a customer should go out through the revolving door in a hurry and so set it spinning was, or might have been found to be, something which the defendant ought reasonably to have anticipated. If that was so, or was

found to be so, the connection between the two was not broken."

As to the suggestion that the plaintiff may have been guilty of negligence in not taking hold of the brass railings across each wing of the door, the Court later in opinion on the same page says: "Even if on this evidence the jury were not justified in finding that she did have hold of the railing, we are of opinion that they could find that she was in the exercise of due care."

In Rathman v. First American Bank & Trust Co., 73 Ohio App. 283, 55 N.E.2d 865, a revolving door case, it is said at page 866: "It is apparent that those who see fit to install and maintain such doors for ingress and egress of their patrons to their places of business must be charged with knowledge that the extremely young and the aged, the weak and the strong, the well and the sick, will use them for the purpose for which they are obviously designed. Such being the case, those responsible for their maintenance must be held to an obligation to use that care in such maintenance which a reasonably prudent person is accustomed to use under like circumstances."

In Hansen v. Henrici's, Inc., 319 Ill.App. 458, 49 N.E.2d 737, the Court says at page 739:

"From the evidence the jury could reasonably find that the door (either through fault of construction or maintenance) was in a condition in which it revolved around the pivot unretarded by friction tending to lessen its speed. The jury could reasonably find the door defective in this respect." and

"We much doubt whether the manifold problems arising out of the doctrine of proximate cause can be solved by any metaphysical formula or made easier to solve by changes of nomenclature. Whether we call the cause 'proximate', 'legal' or 'direct' matters little. It matters much that legal liability for bringing to pass that which harms another should be placed on the right person. Here, it seems facts recited show this plaintiff entirely free from any negligence tending to bring about his own injury. The young men who, in haste and hurry, gave the push to the door which put it in motion at a dangerous speed, were, of course, responsible. Whether the defendant in the construction and maintenance of this door was also at fault was, we hold, a question for the jury to decide. Defendant invited plaintiff to its restaurant. The business was managed and controlled by it. Upon it was the duty of seeing to it that the ways of ingress and egress to its place of business were reasonably safe. The evidence shows one of the purposes of the strips of rubber and felt was that by contact with the door at the floor, at the top and on the sides of the several compartments, any unusual and dangerous speed might be checked or prevented. The question of whether defendant performed that duty was for the jury."

In Raga v. S. S. Kresge Co., 274 App.Div. 966, 84 N.Y.S.2d 776 the Court says at page 777, "The testimony of plaintiff Mrs. Raga and her daughter as to the speed at which the door revolved was, if accredited by the jury, sufficient to warrant a finding that the braking device was so out of adjustment as to allow the door to revolve at a speed fast enough to create an unusual danger to defendant's invitees. While the defendant is not liable for the acts of a third person who dashes through the door without regard to the safety of others, still the defendant upon the evidence here had reason to anticipate some such conduct, and reasonable care would require that the defendant inspect and maintain the braking device in such condition that it would perform its function to hold down the speed of the door. At least, the jury might so find."

In Clark v. New York Hotel Statler Co., Inc., 223 App.Div. 237, 227 N.Y.S. 671, the Court at page 673, uses the following language: "It is common knowledge that revolving doors are for considerable periods of time constantly in motion, and that they are commonly entered by the public while in motion. The plaintiff was not injured in entering the door. She testified she entered the door carefully, and was struck after entry was completed and as she was about to emerge. Even though

the act of some third person in revolving the door at an excessive rate of speed was a concurrent cause of the accident, that would not relieve the defendant from liability."

In Sorenson v. Emery, Bird, Thayer Dry Goods Co., 238 Mo.App. 1241, 187 S.W.2d 480, the Court speaks at page 482, in the following language: "From defendant's briefs and oral argument, we conclude it does not seriously question that plaintiff's evidence tends to prove the rubber and felt strips were worn and curled to such an extent that they did not adequately serve as brakes, and that the door would 'spin fast' and continue to spin around two or three times after normal use. But whether defendant concedes that or not, we hold it to be so; and that such evidence warrants a finding of negligence on the part of defendant in allowing the door to fall into a defective condition through failure to adjust or replace the brake strips."

Some care and time has been taken to ascertain, if possible, what views different courts have taken concerning injuries which have occurred in the use of revolving doors in public or quasi-public buildings as a background to review and considering the evidence in the case at bar. Perhaps unfortunately, no request was made for a transcript of the evidence taken upon the trial and therefore the Court must rely principally upon its own recollection of what the general trend was for the purpose of applying the law previously outlined.

The plaintiff in the case is an old lady, around 78 years of age, who approached and proceeded to enter the post office through the revolving door in controversy with packages for mailing in her hands. As she was knocked down by one of the wings of the revolving door and fell partly into the lobby of the post office, resulting in serious injury to herself, she could not remember distinctly as to her every movement. In fact, on account of the injury it was necessary for her to be brought into court on a stretcher in order to give her testimony. The accident occurred on the 9th day of July 1949 and, as before stated, the trial took place in August of the present year. Somewhat coincident with the accident to plaintiff certain messengers were carrying heavy bags of silver from the post office to one of the banks in Sheridan and made their exits through the door. One of these bank messengers testified that when he passed through the door and was a considerable distance away and adjacent to the first step down to the sidewalk he noticed that the door was continuing to revolve. Another, and the last one of the bank messengers to use the door, testified that when he approached it for exit the door was revolving and that he had to stop before he could step into it. The janitor of the post office building stated that he made an adjustment of the door three or four times a year and that he had noticed nothing unusual about the door on the morning the accident occurred. The postmaster testified that he was not present at the post office upon the day the accident occurred and therefore did not hear of it until two or three days later. This official likewise testified as to the mechanism of the door but did not purport to be a revolving door expert. In fact his testimony seemed to reflect an opinion that all revolving doors were more or less dangerous and that he had been attempting for a number of years to have them replaced with another type of door. As to the construction of the door, Post Office Inspector Bright, whose deposition was taken, states that he, in the line of duty, frequently examined these doors and without the benefit of any door expert in an explanation of the retarding devices, we should say that this witness was probably the most qualified to explain the general features of the door's construction. In speaking of the felt strips on the side and on the top and bottom of the door panels and the position of the brass strip running from the top to the bottom of the door casing he stated that the purpose of these was that when the felt strips strike the metal strips it has a retarding effect upon the rotation of the door and as to their condition at the time of the examinations subsequent to the accident he stated that although the felt strips were worn, they were not worn to

the point where they did not have an alternate contact with the sides of the door and as to their specific condition he testified that there were small breaks in these strips but widely separated. At another point he stated that there was a felt strip at the bottom of the door which had nothing to do with the working or braking operations of the door but acted as an air lock to keep the air from coming into the building and that the retarding effect is caused by the friction of the felt strips against the door casing. He again testified that after the accident in this case new strips were installed but that such installation did not take place for approximately a month on account of the fact that they had to be furnished and that the authorization must be first approved by the Post Office Department. His general testimony, however, was to the effect that the door at the time of the accident in his opinion was in reasonably good operating condition.

This, in my opinion, is somewhat of a sketchy review as to that portion of the evidence which would seem to be pertinent in enabling the Court to frame its conclusions. As the above cited cases say that the question is nearly always one for a jury to determine, that here becomes the duty of the Court sitting as a trier of the facts. I am of the opinion that the evidence in this case justifies the conclusion that the revolving door at the time of the accident was in an unsafe and dangerous condition in that the retarding devices were either worn or not properly adjusted to retard the revolving of the door after it had been set in motion by people passing through the same and that this condition had existed for a sufficient length of time that the defendant should have had notice thereof. I further conclude that this condition was the proximate cause of the injury to plaintiff independent of all contributing causes. The fact that third persons had passed through the door previously and started it revolving at great speed and in several revolutions was not in itself a contributing cause to the injury so as to relieve defendant, because, as the cases hold, it was the duty of the defendant in operating the revolving door to anticipate that it might be used by some person dashing through without regard to the safety of others and giving reasonable care to maintaining it with braking devices to protect the safety of others. As to whether or not the plaintiff did or did not grasp the brass rails intended for use in retarding the revolution of the door would seem to not be sufficient to hold that the plaintiff did not exercise due care. The testimony of defendant's own witness to the effect that the strips intended for retarding the speed of the door were in a somewhat worn condition and that they were replaced soon after the accident to plaintiff carries a strong inference that there was negligence in the maintenance of the door, if not in its inherent construction, which was the proximate cause of the injury to plaintiff and it will be so held.

There remains for consideration the damages which should be awarded. As before stated, the plaintiff is an old lady with comparatively short expectancy, but with what the proof tends to show is suffering from a permanent disability which may take the form of never permitting her to walk again. Before the accident she claims to have been self-sustaining through sewing for customers in her community. I believe under all the circumstances that an award of $3,000 would be fair and reasonable for her personal injury. The record shows that she incurred indebtedness for medical care in the amount of $230, and hospital care for some two and one-half months amounting to approximately $630. In addition, she was required to spend some sums for the employment of private nurses when she was returned to her home which would reasonably amount to at least $440, making a total sum of $1,300 for necessary medical, hospital and nursing attendance, and a total award of $4,300. Under the Act the Court must fix compensation for counsel for the plaintiff in the event of recovery, which in this case will be fixed on the basis of fifteen percent, making an attorneys' fee allowance of $645.

Findings of fact and conclusions of law in accordance with Rule 52, Fed.Rules Civ. Proc., 28 U.S.C.A., will be prepared by

plaintiff's counsel in collaboration with counsel for defendant, reserving such exceptions as may be desired, together with an appropriate judgment, and submit same to the Court on or before the 1st day of November, 1950. Provided, that if counsel file a written stipulation that the memorandum of the Court be adopted in lieu of specific findings of fact and conclusions of law, to include desired exceptions, then only a judgment may be submitted and the Clerk will make an order accordingly.