## ERNST v. JEWEL TEA CO., Inc.
### No. 10542.

United States Court of Appeals
Seventh Circuit.

July 14, 1952.

Rehearing Denied Aug. 28, 1952.

Albert M. Howard, Alvin G. Hubbard, Chicago, Ill., Hubbard, Hubbard & Dorgan, Chicago, Ill., of counsel, for appellant.

John J. Kennelly, Chicago, Ill., Philip Carey, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment of the District Court, sitting without a jury, which awarded the plaintiff damages of $35,000.00. The court found that injuries suffered by the plaintiff in a fall were due to the defendant's negligence; that plaintiff suffered a fractured hip; that plaintiff had required and would require a great deal of hospitalization and medical care; and that plaintiff had a life expectancy of five and a fraction years. The defendant on this appeal asserts primarily that the evidence failed to show any negligence upon the part of the defendant or that the plaintiff was exercising due care.

The accident occurred about 4:00 P.M. on July 25, 1950. At that time the plaintiff was more than 77 years old, was slightly over 5 feet in height, and weighed approximately 100 pounds. At the time of the accident the plaintiff had been shopping in the defendant's grocery store, located at 2744 West 55th Street in Chicago, Illinois. The plaintiff had been in this store many, many times before and had left the store by the same exit. At the time in question the plaintiff was in the act of leaving the store. The exit door is operated mechanically. The operation is started in motion by an "electric eye" when a person interrupts either of two beams of light which extend across the exit. The first of these two light beams extends between two posts on the inside of the store. The second beam extends from a post outside of the door to a post on the other side of the exit inside of the door. As a person intercepts the first beam by approaching the door, the door is opened, and as he intercepts the second beam, which extends diagonally across the threshold, the door is held open as he walks out to the public sidewalk. The width of the doorway is 40 inches.

One expert witness testified that there are two spots, approximately 7 inches by 15 inches, one just on the inside of the threshold and the other just on the outside of the threshold and approximately against the jamb opposite the hinges on the door, where a very thin person could stand and

not interrupt either beam. The expert also testified that if such a person stood in either of these spots, the door would then close, and that in so closing, the outer edge of said door would travel the first 45 inches in 8 seconds and would be snubbed and then travel the last 6 inches in about 2 seconds. While the door was shown to weigh 132 pounds, it was also shown that the door could be stopped and could be held stationary by a pressure of from 5 to 10 pounds. One expert said that the pressure required to do this was only 4 pounds.

The plaintiff herself was apparently unable to explain exactly what happened at the time of the accident. The manager of the defendant store said that he was notified that the plaintiff had fallen just outside of the store; that he immediately went to the plaintiff and picked her up from the public sidewalk in front of the exit door; and that at that time the plaintiff was lying about 2½ feet from the building line. There was a light railing extending from the post containing the electric beam to the door jamb opposite the hinges, forming a narrow passage 40 inches wide between the wall along the east side of the exit and this rail. This passage extended about 40 inches from the threshold of the exit out to the public sidewalk. The store manager said that when he picked the plaintiff up she was lying about 2½ feet out from the end of this passage.

The District Judge apparently did not believe the store manager who testified that the plaintiff was lying out on the sidewalk, but believed instead that, as the plaintiff stopped and stood in this doorway, she was struck by the door, was knocked down and was found by the store manager at that spot.

The door in question swings towards the right side of a person using this exit. The plaintiff's injury consisted of a fracture of her left hip. The undisputed testimony was that there were no bruises on the plaintiff's body other than on her left hip.

Nowhere did the plaintiff specify or show in just what manner the defendant was supposed to have been negligent. Plaintiff's amended complaint alleged: "It was the duty of the defendant to keep and maintain said premises and said door and apparatus in a reasonably safe condition for its customers and invitees, including not only normal persons, * * * but aged and infirm persons, including this plaintiff, then almost 78 years of age. While the plaintiff was in the process of leaving said store through said door, she was struck by said door and was thrown to the pavement. * * * There were no warning signs * *. * * * Plaintiff had no manual control of said door * * *. Plaintiff * * * was struck by said door, while in the exercise of that degree of ordinary care required of this particular plaintiff. * * * Plaintiff had no notice or knowledge of two areas on the floor of said door which constituted blind spots or unsafe spots at which a person could be struck by said door. * * * and plaintiff was struck at said area by said door, and was caused to fall and to be injured."

Nor are we informed by the Findings of Fact of the District Court what constituted negligence on the part of the defendant. The court's Finding No. 6 states: "Said door faced outward in a southerly direction. Plaintiff had no notice or knowledge that an area existed at and toward the north of the threshold of said door which constituted an unsafe area in which the plaintiff, a person of slender build, could be struck by said door while hesitating or standing at said area; and plaintiff was struck at said area by said door, and was caused to fall and to be injured." The repetition of the word "unsafe" in the court's finding as the word had been used in the plaintiff's amended complaint to describe a "dead spot" just north of the threshold is the only indication by the court of what it may have considered the breach by the defendant of its duty to the plaintiff.

One other factor which the trial judge apparently considered in arriving at the finding of defendant's negligence should be considered. The man who was the manager of this store at the time of the accident testified that he had sent in a written report of this accident to the main office of the defendant company. The plaintiff subpoenaed the defendant to produce this report but the attorneys for the defendant and the persons

having charge of the defendant's files on accidents testified that the company did not have such a report, and that such a report was not among the papers or in the files of the defendant. One of the papers produced did show that this accident had been reported to the defendant but there was testimony to the effect that the report was made orally.

The trial judge expressly found that Albert M. Howard, who conducted the trial for the defense, and Edward Vorbeck, attorney and assistant secretary for the defendant company, both "exercised the best of faith," and stated that he was not charging either of them with bad faith. The trial judge made this statement after Vorbeck had testified that he had continuously had charge of all of the defendant's customer accident records since prior to the time of this accident; that he did not remember of ever having received a written report on the Ernst accident from the store manager; and that he had searched the defendant's files and records and had found no such report.

However, in Finding No. 11, the District Court stated: " * * * that the defendant did not act in good faith in this respect [in failing to produce the report which the store manager said he made] and did not make an adequate or reasonable explanation for its failure to produce said report." This Finding stated further that: " * * * the court is convinced that said report was made, and were it produced, it would contain evidence against the defendant." There was no evidence, however, from any source as to what the report contained. Floyd Bickel, the store manager, and the only witness who testified that a written report was made, did not remember what he had said in the report.

It is evident from the testimony of Bickel that the report did not contain the names of any witnesses because he testified positively that he could not find any eye witnesses to the accident. In spite of this the plaintiff seems to contend that there were eye witnesses—basing the contention on a request in a letter from the insurance company to the defendant, asking the defendant to keep the insurance company informed "of any change of address of any witnesses to this occurrence." This letter of the insurance company was in answer to a letter from the defendant informing the insurance company of the filing of this action, and asking the insurance company to arrange for an appearance and the defense of the action. The defendant's letter made no mention of any witnesses. The mere mention of possible witnesses in the letter from the insurance company furnishes no reasonable basis for assuming that there were witnesses whose identities were being concealed.

■ A storekeeper is not liable as an insurer to his customers. He may only be held liable for injuries caused by his negligence. The complaint and the decision of the District Court are both based on the theory that the defendant here has somehow been negligent. The Illinois cases where storekeepers have been held liable for accidents involving doors have all been cases in which there was a showing of negligence on the part of the storekeeper. Thus in Todd v. S. S. Kresge Co., 384 Ill. 524, 52 N.E.2d 206, the court found that the storekeeper had failed to use due care for his customers' safety by failing to provide a safe entrance. There it was shown that a door check on the store's entrance door was designed for a door which did not swing as wide as the door to which it was attached. The result was that when the door was fully opened and then started to close, the check would catch it and hold the door open until a slight vibration occurred when the door would be released and violently swing closed. Under these circumstances the plaintiff there was struck on the head and knocked down as he was entering the door. In Hansen v. Henrici's, Inc., 319 Ill.App. 458, 49 N.E.2d 737, an elderly man was struck and knocked down as he stepped out of a revolving door which had been given a vigorous push by two young men. In that case the court found that the storekeeper had been negligent in permitting the flanges and stripping which served as a brake on the door to become frayed and worn, a condition which was apparent and which the storekeeper knew, or should have known, existed. See

also Crump v. Montgomery Ward & Co., 313 Ill.App. 151, 39 N.E.2d 411.

These Illinois cases follow the general rule in this country under which it is required that negligence on the part of the defendant must be shown and that it must also be shown that the defendant knew, or should have known, of the dangerous condition. On this subject see Annotations in 169 A.L.R. 1346 (Revolving doors); 16 A.L.R.2d 1161 (Swinging doors); and 20 A.L.R.2d 8 at 46, et seq.

In Watkins v. Taylor Furnishing Co., 1944, 224 N.C. 674, 31 S.E.2d 917, a customer was struck by the sudden closing of an electrically controlled door. The court there apparently assumed that there was some defect in the door but held that there could be no recovery because there was no evidence of negligence and because there was no evidence that the defendant had any notice of a defect in the door.

In the instant case there was no evidence that there was any mechanical defect of any kind in this door or in the mechanism for closing the door. A representative of the manufacturer of the door, sent out to examine this door a few days after the accident, found it to be "in perfect working order." There was no evidence to show, and the plaintiff does not even claim, that this door worked any differently than any of the thousands of doors operated by electric light beams which have been installed in stores, hospitals and other public buildings throughout the United States. The only suggestion by the plaintiff of anything which might have been wrong with the operation of this door was that a person, while going through this exit, might stop and stand for a few seconds in either of two small elliptical areas, one located just inside of the threshold and the other just outside, and might thereby release the closing mechanism of the door so that the door would close against the person's body. A revolving door in motion would also come in contact with a person's body if the person should stop and attempt to stand still in the path of the door. A swinging door held in a closed position by a spring would also strike a person who would step into the path of the door and stand there until the door swung back into the closed position.

The District Court stressed the fact that the door weighed 132 pounds. But the expert witnesses who testified said that they had made tests which demonstrated that a pressure of 4 to 10 pounds exerted against the door in motion was sufficient to stop its motion. As we have pointed out above, the experts also testified that when the door was closing the edge of the door opposite the hinges traveled the first 45 inches of the arc made by the door in closing in 8 seconds. Translated into miles per hour, this is a speed of less than one mile in three hours—more slowly than the average person walks. The outside edge of the door completed the last 6 inches of the arc in 2 seconds, a speed approximately one-half of the speed traveled during the first 45 inches of the movement. The evidence as to the force and speed of this door is undisputed. We see, therefore, that the force exerted by the door coming in contact with a person in the exit would amount to no more than the force which might be exerted by another person walking and bumping into a second person.

If the plaintiff had been struck by the door and had thereby been caused to fall, she would necessarily have fallen in, or just north of, the threshold of the door, where the court found that she was "hesitating or standing" when she was struck by the door. But we have the positive evidence of the store manager who said that he picked the plaintiff up from the public sidewalk in front of the store where she was lying a short distance from the building line of the store. The plaintiff herself testified that she remembered that after she fell somebody came over to her and lifted her up off of the sidewalk and carried her inside of the store. Immediately after the plaintiff had testified as to being picked up from the sidewalk and carried into the store, the trial court stated: "This witness remembers, I can tell she was fully conscious at the time of the occurrence. She remembers well." This undisputed testimony of the plaintiff and of the store

manager was the only evidence as to where the plaintiff fell. Yet if her fall had been caused by her being struck by the door while standing in, or just inside of, the threshold, as the trial judge found, she would necessarily have fallen in the threshold or inside the store.

On direct examination the plaintiff testified: "I was right in the door when the door came right down on my head. [A physical impossibility.] The door struck me." On cross-examination, however, the plaintiff admitted that she did not see any part of the door come in contact with her; that she did not feel anything come in contact with or touch any part of her person or body before she fell; and that she did not believe she could tell the court whether the door came in contact with her at all before she fell. This last answer by the plaintiff was stricken by the court on its own motion on the mistaken belief that the question was objectionable. This question as phrased by the attorney for the defendant was: "You can't tell the court at this time whether the door came in contact with you at all before you fell, can you?" This was a proper question on cross-examination in testing the plaintiff's testimony on direct examination as to the manner in which she had been injured.

The evidence as to the plaintiff's injuries was that her left hip was fractured and that the only bruises on her body were on her left hip. As the plaintiff left the store the door was on her right side and could only have struck her left side by her turning around as she stood in the doorway, but she testified that at the time of the accident she was facing toward the street, that is, with her right side toward the door which she claimed struck her.

A consideration of the plaintiff's own testimony indicates that if, at the time of the accident, she had stopped and was standing in the door, as she said, she was not using due care for her own safety. Plaintiff had been in this store and had come out through this exit "many, many times." She was, therefore, necessarily familiar with the operation of the door even though she was not familiar with, or did not understand, the mechanism involved in the door's operation. Plaintiff had never before experienced any difficulty in going out of that door. On the day of the accident the door did not operate any differently than it had on the previous occasions when she had used it. The plaintiff testified as to all these facts.

It is interesting to note that the original complaint herein, which was designated as a part of the record on this appeal, alleged that the defendant carelessly and negligently caused and permitted the exit door to be in such a dangerous and unsafe condition that "it suddenly and violently and without warning swung into and upon the plaintiff while the plaintiff was in the exercise of ordinary care for her own safety * * *." This original complaint also alleged that "the defendant had reasonable notice and opportunity to take appropriate action to make said door reasonably safe * * *." The amended complaint omitted these allegations as to the door's operating suddenly and violently, and also the allegations as to the defendant's having reasonable notice of the condition and reasonable opportunity to repair the known condition. If these allegations had remained in the amended complaint and had been supported by the evidence, we would have had here an entirely different situation. The evidence clearly and definitely proved that the door did not suddenly and violently close and strike the plaintiff. Instead the evidence all indicated that the door was in "perfect working condition"; that it worked the same as it had on the "many, many times" the plaintiff had previously used it; and that it operated so slowly and gently that it could not have harmed the plaintiff if it had come in contact with her body.

A consideration of the entire record in this case convinces us that the evidence here furnished no reasonable basis for the finding of the trial court that the defendant was negligent.

The judgment of the District Court is reversed and the cause is remanded for further proceedings consistent with this opinion.