## Miller *v.* Republic Chemical Company, Appellant.

*Negligence—Master and servant—Ordinarily safe appliances—Judgment for defendant.*

1. When an employer furnishes his employee with tools and appliances which though not the best possible, may, by ordinary care, be used without danger, he has discharged his duty and is not responsible for accidents.

2. In an action for personal injuries received by an employee while unloading freight from freight cars, where the negligence charged was in failing to supply cranes or other appliances for unloading the cars, instead of iron straps for sliding the freight to the ground, but where it did not appear that the method employed was dangerous or unusual, although that suggested by plaintiff might have been safer, it was held error to submit the case to the jury and a judgment on a verdict for plaintiff was reversed and judgment was entered for the defendant.

Argued Oct. 15, 1915. Appeal, No. 205, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., July T., 1913, No. 1589, on verdict for plaintiff, in case of U. G. Miller v. Republic Chemical Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,000 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*C. A. Jones,* with him *Franklin T. Nevin* and *Sterrett and Acheson,* for appellant.

*L. K. Porter,* with him *S. G. Porter,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 3, 1916:

The appellant company owns and operates a plant for the manufacture of chemicals. In the course of the construction and operation of its plant, it received from time to time on board cars certain heavy pieces of machinery known as "basket-tanks," varying in weight from one to two tons each. These cars were open gondola cars, and were delivered on the siding of the appellant company on its own premises. The work of unloading was done by the appellant. The cars employed, though open, had heavy frame work at the sides and ends extending some three or four feet above the floor, the ends being detachable, but not so the sides. It was impracticable, therefore, to unload the baskets from the side of the car except as they were first hoisted over and above this frame work, a condition which would seem to require the employment of a crane or other similar device. The frame work at either end being removable, it was practicable by removal to skid the baskets out from the body of the car through the end to a platform, and lower them from there to the ground. A temporary platform for this purpose was used, constructed with two heavy beams resting at one end on the bumper of the car carrying the freight to be unloaded, and the other end resting on the bumper of a car placed at a distance of twelve feet, thus bridging over the intervening space.

Extending out from the body of the car and across the platform two iron straps were laid, each twelve feet in length, to facilitate the moving of the baskets from the car to their proper place on the platform. This was the method adopted by the appellant from the beginning and was used in the present case. The plaintiff was one of four employees who had been assigned to this work. He was boss of the gang, and had been employed in this kind of work for six months. Having removed the framework at the end of the loaded car preparatory to the work of skidding the basket out to the platform, the plaintiff was directed by the superintendent to place it, not on the ground where it might be overlooked when the unloading was finished, but against the end of the car which was being used only as a support to the platform or bridge. These arrangements completed the work of skidding the basket out upon the platform began. When it had so far been proceeded with that the basket was entering upon the iron straps laid on the platform, one of the straps slipped from its position, was forced forward by the pressure until the farther end of it struck the end-gate or frame which had been placed at the end of the other car in a slanting position, causing it to fall in such a way as to injure the plaintiff's arm. It was for the injury thus received that plaintiff brought this action for damages. In the statement of claim filed the negligence charged is thus stated, "said injuries were due to the negligence of the said superintendent in charge of the directing of the work, in failing to make use of a crane or other suitable appliance in unloading the said basket-tank, as the defendant well knew, or in the exercise of ordinary care, should have known, that the appliances used were not safe and suitable appliances with which to unload the said tank, and knew, or in the exercise of ordinary care should have known, that the method of unloading said tanks was an unusual method and more dangerous than the ordinary

method of unloading heavy pieces of machinery by the use of a crane."

In his final instructions to the jury the learned trial judge said, "Now all of this that I have said to you depends upon whether you find that the want of a crane was the proximate cause of this injury; of course, if this man had not been working there at all he would not have been injured; and I will submit to you the question whether or not you find that the fact that there was not a crane furnished, and that they were doing it in this way, was the proximate and direct cause of this injury, under the circumstances; this injury having taken place, not by the falling of the object that they were moving, but by the falling of this door. That is a question for you to determine; whether you believe the falling of this door on him was the proximate result of the absence of a crane. If it was, and there is no assumption of risk or contributory negligence, then the plaintiff is entitled to recover, otherwise he is not."

It is thus made very clearly to appear that there was but a single allegation of negligence in the case, namely, failure to use a crane for the unloading of the baskets; and the case was submitted to the jury to find whether such failure was the proximate cause of .the accident. The instruction of the court begged the very question in issue. It assumed that the adoption by the defendant of another method of unloading the basket-tanks than by means of a crane was an act of negligence, and submitted to the jury the single question whether this was the proximate cause of the defendant's injury. Except as this was a negligent act, under no circumstances could it have been a proximate cause. Inquiry for proximate cause in such cases never extends further back than to some original negligent act which set in motion the chain of circumstances leading up to the injury. However remote this is, it may, notwithstanding, be a proximate cause; but the first essential is, whether near or remote, that it must be a negligent act; for ex-

cept as it involves negligence it is without legal relation to the injury. As the issue was framed the first question to be determined was, whether the failure of the defendant to use the crane method for unloading was negligence. The charge of the court in the respect we have indicated amounted to an instruction that it was, since the question was not left to the jury to pass upon. Assuming this to be the explanation of the charge, its correctness depends on the sufficiency of the evidence to warrant it. The evidence shows no conflict as to the facts. Where this occurs and the evidence admits of no other inference than negligence, it is the duty of the trial judge to so declare without referring it to the jury; where it utterly fails to warrant such inference, it is no less the duty of the trial judge to so declare. Now what evidence was there in this case to support plaintiff's contention that it was negligence on the part of the defendant to adopt the method of unloading it did? If none, then defendant was entitled to binding instructions. But two witnesses for the plaintiff testified on this branch of the case, both mechanical engineers. The first one called gave it as his opinion that the crane method was the safer, and spoke from no wider experience and observation than that acquired in the two different establishments in which he had been employed; the other expressed like opinion based on an experience and observation in the plant in which he was employed. Neither testified that the method adopted by the defendant in this case was not a reasonably safe method, and neither testified that it was not in common use. One of these witnesses, the latter one called, was asked this question: "Q. As a general proposition the heaviest pieces can be handled by pinching bars and skids as well as by overhead crane?" His answer was "Yes, sir." The insufficiency of this evidence becomes apparent when we consider the burden that rests upon a plaintiff in such cases, and the measure of duty required of the employer. The burden was on the plaintiff to affirma-

tively establish the negligence that his statement charges, namely, that his injury was the result of an unusual method which exposed him to an extraordinary risk: Northern Central Ry. Co. v. Husson, 101 Pa. 1; Titus v. Bradford, Bordell & Kinzua R. R. Co., 136 Pa. 618. The plaintiff admits that as an employee of the defendant he had been engaged in exactly the same work, using the same device, for a period of six months prior to the accident complained of. He mentions not a single mishap during this period. If his injury was the result of an unusual occurrence, to the ordinary mind it would seem that the unusual occurrence was the sliding of the iron strap which striking against the end-gate threw it down, rather than the method of unloading which had been employed so long without accident. This suggests a proximate cause, if negligence were connected therewith, which seems not to have been considered. But aside from this, what duty owing to the plaintiff in the choice of method did the defendant neglect to observe? In Pittsburgh & Connellsville R. R. Co. v. Sentmeyer, 92 Pa. 276, we said that when the employer furnishes his employee the tools and appliances which though not the best possible, may, by ordinary care be used without danger, he has discharged his duty, and is not responsible for accidents. And this is the doctrine of all our cases. In Payne v. Reese, 100 Pa. 301, we said (306):

"If the machinery be of ordinary character, and such as can with reasonable care be used without danger to the employee, it is all that can be required from the employer; this is the limit of his responsibility and the sum total of his duty."

Even were it admitted that the evidence was sufficient to warrant the conclusion that the crane method was the safer, it comes far short of showing a disregard of any duty on part of the defendant in not adopting it. A plaintiff can only prove negligence in such case as this by showing that the appliance used was not reasonably

safe. Even though it be made to appear that it was not in ordinary use, such fact would not warrant an inference of negligence. "The party charged with negligence disproves it by showing that the tools he employed were those in general use in the business, but the converse does not follow. The party charging negligence does not show it by showing that the machinery was not in common use. If it should be so held, the use of the newest and best machine if not yet generally adopted, could be adduced as evidence of negligence": Cunningham v. Ft. Pitt. Bridge Works, 197 Pa. 625. Upon a careful review of all the evidence we can reach no other conclusion than that the case called for binding instruction for the defendant and that it was error, therefore, to refuse the motion made by defendant. We think it clear beyond question that the immediate cause of the action was the sliding of the iron strap. Whether this was the result of negligence, and if so whose, are questions outside the issue we are dealing with. The assignments of error are sustained and the judgment is reversed, and judgment is now entered for defendant.