Donnelly, Admrx., *v.* Fred Whittaker Company et al., Appellants.

Argued January 11, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Howard R. Detweiler*, with him *Frank R. Ambler*, for defendant, Tidewater Field Warehouses, Inc., appellant.

*Walter B. Gibbons*, for defendant, Fred Whittaker Company, appellant.

*James F. Masterson*, with him *Joseph A. Palmer*, for appellee.

OPINION BY Mr. Justice DREW, March 20, 1950:

Hugh E. Donnelly, a United States customs inspector, was killed on May 1, 1947, when a 700 pound bale of wool was pushed from the top of a stack of bales and fell on him. At the time he was engaged in weighing and testing wool owned by Fred Whittaker Company (hereinafter called Whittaker) in a warehouse operated by Tidewater Field Warehouses, Inc. (hereinafter called Tidewater). To recover damages suffered as a result of Donnelly's death, this suit in trespass against Whittaker was brought by Mary Frances Donnelly, decedent's widow, as administratrix of his estate, on behalf of herself and her two minor chil-

dren[1] and also on behalf of Donnelly's estate.[2] Whittaker brought Tidewater on the record as an additional defendant. The jury returned verdicts against both defendants in the amount of $32,078 in the wrongful death action and $10,400 in the survival action. After motions for judgments n. o. v. and new trial were overruled, judgment was entered on the verdicts and defendants appealed.

Whittaker is engaged in the business of importing and processing raw wool. In order to avoid the necessity of making immediate payment of the import duty, the wool is stored in bonded warehouses subject to the joint control of the warehouseman and the U. S. customs officials. The duty is then paid as the wool is removed. Whittaker, needing a bonded warehouse in the City of Philadelphia and being unable to operate one for its own wool, leased to Tidewater the warehouse building here involved and at the same time entered into a warehouse agreement with Tidewater. By the terms of the agreement, Tidewater agreed to use the warehouse exclusively for the storage of Whittaker's wool and Whittaker agreed to pay certain storage charges. The agreement further provided that Whittaker would furnish all labor necessary for the supervision, storage, handling, removal, weighing, packing, delivery and protection of the wool and that "All such labor, when performing said services on the warehouse premises, is to be subject to the exclusive control and supervision of . . . [Tidewater]."

On May 1, 1947, Donnelly went to the warehouse to weigh and sample wool stored there by Whittaker. One William Hartley, who was in the general employ of Whittaker and acted as assistant storekeeper for Tidewater as well, and one John Concannon, also in the

---

[1] Wrongful Death Statute of April 26, 1855, P. L. 309, as amended.

[2] Survival Act of July 2, 1937, P. L. 2755.

general employ of Whittaker, were present to aid in this work. The wool was packed in bales approximately four feet in height, depth, and width and weighing between 650 and 750 pounds. These bales were stored in the warehouse in stacks of four. In order to get the bales down to the floor to be weighed, Concannon would climb up on the stacks and push or rock the top bale until it fell to the floor.

The work began at 9:00 A. M. and from then until the accident occurred Donnelly stood near a scale which was located at one end of the warehouse so that he could check the weights of the bales. Shortly after 3:00 P. M. Concannon pushed over a stack of bales in the vicinity of the scale without any warning being given. Donnelly, who was facing the scale with his back to the falling stack, was struck by one bale which crushed him against another causing his fatal injuries.

Defendants argue that Hartley and Concannon were breaking down the stacks in the usual manner and since plaintiff did not prove a safer way of doing it, no negligence was shown. However, customary methods do not furnish a conclusive test on the question of negligence: *Maize v. Atlantic Ref. Co.* 352 Pa. 51, 57, 41 A. 2d 850. "In the piquant language of Mr. Justice HOLMES: 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not': Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 470": *Hudson v. Grace et al.,* 348 Pa. 175, 181, 34 A. 2d 498. Here, reasonable prudence dictated that some warning be given before pushing down bales weighing 700 pounds. Neither Concannon who did the pushing nor Hartley who directed it gave any such warning. Their failure to do so was a lack of due care and rendered them and their master liable for their negligence. The fact that

they never gave a warning is no excuse. Negligence can never be justified by repetition.

Nor is there any merit in defendants' contention that Donnelly was guilty of contributory negligence because he failed to take proper precautions for his own safety. He was standing facing the scale, the only position he could assume to carry out his job of weighing the wool. This is not a case where Donnelly moved into a position of danger as defendants contend. He had been in that same place for six hours prior to the accident and both Concannon and Hartley knew that he was there. Under those conditions, Donnelly was not required to anticipate that bales in close proximity to him would be pushed down without any warning. He was in a place where it was necessary for him to be to properly perform his duties. It was not inherently dangerous but became dangerous only because of the negligence of Concannon and Hartley. Certainly, it cannot be said that Donnelly was guilty of contributory negligence because he failed to foresee the negligence of another.

The jury, by its verdict, determined that Concannon and Hartley were the servants of both defendants and that both were, therefore liable. Each defendant argues that as a matter of law the other is solely liable for the negligence of Concannon and Hartley. Tidewater bases its argument on the fact that both men were in the general employ of Whittaker and were doing the work for Whittaker's benefit. Whittaker, in turn, relies on the warehouse agreement as showing that Tidewater had the exclusive right to control the men working in the warehouse.

It is not questioned that by the terms of the agreement, Whittaker lent its employees to Tidewater. In determining liability for the negligent acts of those employees, the test is whether they continued subject to the control of Whittaker or became subject to the con-

trol of Tidewater: *McConnell v. Williams,* 361 Pa. 355, 65 A. 2d 243; *Siidekum, Adm., v. Animal Rescue League,* 353 Pa. 408, 45 A. 2d 59; *Pa. Co., etl., v. Phila. Elec. Co.,* 331 Pa. 125, 200 A. 18. Where different inferences may be drawn from the evidence, the issue must be submitted to the jury: *McConnell v. Williams,* supra, *Lang et al. v. Hanlon et al.,* 302 Pa. 173, 153 A. 143. And where the service to one master does not involve any abandonment of the service to the other, the jury may properly find that both masters have the right to control so as to render each liable for the servant's conduct: *Siidekum, Adm., v. Animal Rescue League,* supra; *Koontz v. Messer et al.,* 320 Pa. 487, 181 A. 792; *Gordon v. Byers M. Car Co. et al.,* 309 Pa. 453, 164 A. 334. On the basis of those principles the trial judge left it to the jury to determine whether Whittaker or Tidewater or both had the right to control. However, the warehouse agreement, which was introduced into evidence on the issue of agency, is conclusive on that question and the court below should have so ruled as a matter of law. Paragraph 8 of that agreement provided that Whittaker would furnish to Tidewater ". . . all the labor . . . necessary for any purpose connected with the supervision, storage, handling, removal, *weighing* . . . of all goods or property stored . . . in said warehouse. All such labor, when performing said services on the warehouse premises, is to be subject to the *exclusive* control and supervision of . . . [Tidewater]." (Italics added.) Concannon and Hartley were furnished by Whittaker for purposes connected with the weighing of the wool. By the express language of the agreement they were exclusively under the control of Tidewater while doing that work. That language is clear and unambiguous. It fully shows the relationship of the parties insofar as this case is concerned. There was, therefore, no issue of fact to be submitted to the jury on the question of agency. Tidewater had exclusive con-

trol over the negligent employees. That being true, Whittaker is not liable and judgment must be entered in its favor.

In reaching this conclusion we are not unmindful that in Paragraph 9 of the warehouse agreement, Whittaker agreed to indemnify Tidewater against any "claims, demands, actions or causes of actions of any kind or nature. . . ." Tidewater's right to indemnity must be determined in an action on the contract and cannot be adjudicated in this trespass suit. See *Volta v. Markovitz Bros., Inc., et al.*, 351 Pa. 243, 40 A. 2d 388; *Dively v. Penn-Pittsburgh Corp. et al.*, 332 Pa. 65, 2 A. 2d 831.

Whittaker also complained that the verdicts were excessive. However, since that defendant is entitled to judgment n. o. v. and Tidewater did not join in that complaint, the question need not be discussed.

On this record plaintiff is entitled to recover from the master of Concannon and Hartley. Tidewater had exclusive control over them at the time of the accident and the recovery, therefore, can only be against it.

Judgment against Fred Whittaker Company is reversed and here entered in its favor.

Judgment against Tidewater Field Warehouses, Inc. is affirmed.

Mr. Justice JONES would affirm as to both.