McAdoo v. Autenreith's Dollar Stores, Appellant.

388

Argued October 4, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*V. C. Short,* for appellant.

*Morris M. Berger,* with him *Samuel Krimsly,* for appellee.

OPINION BY MR. JUSTICE JONES, November 15, 1954:

The plaintiff recovered a verdict for damages for personal injuries suffered when she was struck by the back-swing of a swinging door at the entrance to the defendant's store on Forbes Street in Pittsburgh. The court denied motions for judgment n.o.v. and for a new trial without an opinion, the term of the judge who presided at the trial having expired shortly after entry of the order. The defendant appeals from the judgment entered on the verdict and assigns for error only the lower court's refusal of the motion for judgment n.o.v. In support of the motion, the appellant argues that (1) the plaintiff's injuries resulted from the intervening negligence of a third person, (2) the plaintiff failed to make out a case of causative negligence on the part of the defendant and (3) the plaintiff was guilty of contributory negligence as a matter of law. Viewing the evidence and the reasonable inferences deducible therefrom in the light most favorable to the verdict, as we are required to do, the material facts may be summarized as follows.

Patrons entering the defendant's store, as did the plaintiff, step from the sidewalk into a display vestibule which connects with the store proper by means of a doorway closed off by double swinging doors. In the early afternoon of a January day, the plaintiff, a woman of forty-five, entered the display vestibule, intending to go into the store to make a purchase. She had been in the store on previous occasions and was aware that the swinging doors at the entrance swung in both directions. With her handbag under her left arm, she approached the "In" door on her righthand side and pushed it open with her right hand. While in that position she observed a man, clad for the outdoors, who was walking toward the "Out" door on the plaintiff's lefthand side. When she had cleared the

doorway on her right, she started to walk to her left, proceeding by putting her left foot forward; her right foot was then slightly in back of her. At that moment the door on her left, presumably from being released by the man who had appeared to be leaving the store, swung back into the store and struck her on the right foot and thigh. The force of the blow propelled her to the floor of the store against a counter about seven feet from the doorway, causing the injuries for which she brought suit.

The doors in question are constructed of lightweight wood and glass. The door on the right (to one entering the store) was two feet eight and one-half inches wide and the other door, two feet nine inches. There were no warning signs, dividers or railing barriers separating the doors. Each door was hung on three double action (Bommer type) hinges which permit a door to swing freely in either direction within its fixed arc. The Bommer type hinge is equipped with two spring barrels one of which is on either side of the door. The barrel springs are adjusted to equalize their tension so that the door stays on the transverse center line of the doorway when in its normal closed position. When the door is pushed open the motion winds the one spring, thereby increasing its tension and, concomitantly, the opposite spring is unwound which reduces its tension. As the door is released from an open position, the tension of the tightened spring causes the door to swing back which it ordinarily does to a point beyond the line of its normal closed position, thus creating a tension in the opposite spring which, in turn, causes the door to swing back the other way. During the diminishing progress of the oscillation, the tension in the two springs becomes equalized and the door comes to rest at its closed position where it remains until pushed open again.

The plaintiff's theory of liability is that the proximate cause of her injury was the defendant's negligence in maintaining swinging doors on spring hinges without retarding or stopping devices so that the doors, after being pushed open, could not swing back with sufficient force to strike and throw a person to the floor. The plaintiff offered no testimony to show that the doors, hinges or springs were inadequate, improper, out of adjustment or defective in any way whereby their use was rendered unsafe. This failure of proof on the part of the plaintiff is the more significant in the light of the testimony of the expert called by the defendant who stated without contradiction that the Bommer type of hinge is the standard hinge used in some super markets, five and ten cent stores and moving picture theatres where lightweight doors are installed on wooden jambs such as in the entrance to the defendant's store. He further testified that the Bommer type hinge was used in and about Pittsburgh in ninety per cent of the stores like the defendant's, are still being extensively used and that he was installing them practically every week in industrial plants.

We pass over without discussion the defendant's contentions that the plaintiff's injuries resulted from intervening negligence of a third person or from her own contributory negligence. The important and controlling thing is that there was no proof from which the defendant's causative negligence could be inferred save for the happening of the accident itself which, of course, is legally insufficient to establish liability. A possessor of land is not an insurer of the safety of an invitee; the standard of conduct required is merely reasonable care: *Sheridan v. Great Atlantic and Pacific Tea Company*, 353 Pa. 11, 13, 44 A. 2d 280. Indeed, the plaintiff concedes that if the defendant's swinging

doors were reasonably safe when used with ordinary care and in the manner followed by persons generally, the defendant fully discharged its legal duty to the plaintiff in the premises: cf. *Graeff v. Philadelphia & Reading R. R.*, 161 Pa. 230, 236, 28 A. 1107. The question for decision, therefore, is whether the entrance doors provided by the defendant were reasonably safe for their intended purpose when used with ordinary care. The question is not, as the plaintiff assumes, whether the proximate cause of the plaintiff's injury was the defendant's failure to equip the doors with checks or retarding devices that would stop the backward swing of the door instanter on the line of its normal position when closed.

While use of customary methods, machinery or appliances is evidence of an exercise of reasonable care, such usage does not furnish a conclusive test on the question of negligence: *Donnelly v. Fred Whittaker Company*, 364 Pa. 387, 390, 72 A. 2d 61. In *Hudson v. Grace*, 348 Pa. 175, 181-182, 34 A. 2d 498, our present Chief Justice pertinently pointed out "In the piquant language of Mr. Justice Holmes: 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not': Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 470. Or, as was said in Indermaur v. Dames, (1866) L.R. 1 C.P. 274, 288, 19 Eng. Rul. Cas. 64, 78: 'No usage could establish that what was in fact unnecessarily dangerous was in law reasonably safe, as against persons towards whom there was a duty to be careful.'" See, also, *Maize v. Atlantic Refining Company*, 352 Pa. 51, 57, 41 A. 2d 850. In the instant case there is not a scintilla of evidence that the defendant's swinging doors deviated in any way from ordinary and customary usage or that there was anything faulty,

defective or dangerous in the design, construction or equipment of the doors. There was nothing, therefore, from which the defendant could be adjudged guilty of negligence on the basis of any established standard of care.

The deficient evidentiary situation in the instant case is strikingly similar to that disclosed in *Miller v. Republic Chemical Company*, 251 Pa. 593, 97 A. 73. There, the plaintiff alleged that the proximate cause of his injury was his employer's failure to provide a crane instead of skids and a platform for unloading heavy pieces of machinery from railroad cars. The plaintiff produced two witnesses on this branch of the case, both mechanical engineers. The one gave it as his opinion that the crane method of unloading was the safer and the other expressed a like opinion. However, neither testified that the skid and platform method of unloading utilized by the defendant was not reasonably safe or that it was not in common use. In reversing a judgment for the plaintiff, Mr. Justice STEWART, speaking for this court, said (p. 598),— "Even were it admitted that the evidence was sufficient to warrant the conclusion that the crane method was the safer, it comes far short of showing a disregard of any duty on part of the defendant in not adopting it. A plaintiff can only prove negligence in such case as this by showing that the appliance used was not reasonably safe. Even though it be made to appear that it was not in ordinary use, such fact would not warrant an inference of negligence. 'The party charged with negligence disproves it by showing that the tools he employed were those in general use in the business, but the converse does not follow. The party charging negligence does not show it by showing that the machinery was not in common use. If it should be so held, the use of the newest and best machine if not

yet generally adopted, could be adduced as evidence of negligence': Cunningham v. Ft. Pitt. Bridge Works, 197 Pa. 625." The duty of a possessor of land to his invitee is no greater than that of an employer to his employee in respect of the appliances and equipment with which he provides his employees.

In *White v. Board of Education of City of New York*, 249 App. Div. 520, 293 N.Y.S. 70, which was a suit for damages for injury to a five-year old girl by having a finger caught in a swinging door in a classroom at school, the alleged negligence was "based solely on the absence of a door check on the door." The evidence at trial disclosed that the door involved in the accident was a standard classroom door in the schools of Queens Borough and that the standard specifications for the construction of public schools throughout New York City did not require door checks on classroom doors. The jury gave verdicts for the plaintiffs. In reversing the judgments entered on the verdicts, the court said that,—". . . the door here, in its condition on the day the accident happened, was not inherently or obviously dangerous because it lacked a stop. Of course, the accident probably could not have happened had there been a stop, but the mere happening of the accident does not indicate that it should have been anticipated. For untold generations school children have been passing without accident through doors not equipped with stops."

In *Smith v. Johnson*, 219 Mass. 142, 106 N.E. 604, plaintiff sued for injury to a forefinger which was crushed by a swinging door in the vestibule entrance to the defendants' store in Boston. The jury returned a verdict for the defendants whereon judgment was entered. On appeal by the plaintiff, the Supreme Judicial Court of Massachusetts affirmed, saying,—

"We are of opinion that the record discloses no negligence on the part of the defendants. The doors, as described by the testimony and shown by the photographs, were of ordinary construction, and were substantially like those in general and common use for many years in Boston and elsewhere. There was nothing to show that they were not entirely safe when properly used by persons passing through them." *Smith v. Johnson,* supra, was quoted from at length with approval by the Court of Appeals of Georgia in *Sockwell v. Lucas & Jenkins Inc.,* 71 Ga. App. 765, 32 S.E. 2d 201, where a recovery was denied a plaintiff for an injury received while leaving the defendants' theatre by a double swinging door which was not equipped with "any guards, screens or stops to prevent its swinging sharply and with force." Notwithstanding the absence of "stops", the Court of Appeals held that the plaintiff had "failed to prove that his injuries were the result of any negligent act of either defendant."

The cases relied on by the plaintiff are not presently germane. In several of them the negligence alleged was not the failure to provide door checks for swinging doors but, rather, the failure to keep existing door checks in good repair. For example, in *Young v. Bank of America National Trust and Savings Association,* 95 Cal. App. 2d 725, 214 P. 2d 106, where an eighteen-month old child was knocked down and injured by a swinging door which had a defective door check, "there were two large bronze doors so hinged that each could be pushed either outward or inward . . . [and] equipped with devices known as double-acting door checks which, if in proper working order, would cause the doors to stop when they first reached the center or closed position and prevent them from swinging outward and inward after they had been released by a person who had passed through the doorway." A pa-

tron having just left the bank, the released door continued to swing back and forth and, in consequence, struck and injured the child plaintiff who was toddling nearby. The evidence showed that the checking action on the door had not been operating for several months and that some three or four weeks prior to the accident the bank manager's own grandson had been similarly injured by the same door. The bank's negligence was in knowingly maintaining a defective door check, without the proper action of which, the door by reason of its size and weight was capable of injuring persons with whom it swung into contact. The cases of *Todd v. S. S. Kresge Company*, 384 Ill. 524, 52 N.E. 2d 206, and *Martin v. Missouri Pac. R. Co.*, 253 S.W. 1083 (Mo. App.), are equally inapposite. *Dolan v. Growers Outlet, Inc.*, 129 Conn. 158, 26 A. 2d 788, whose brief per curiam opinion the plaintiff cites, is contrary to what we believe to be the clear weight of authority.

The plaintiff argues that it is illogical to impose liability on one who provides a door check, albeit defective, and relieve another who provides no stop at all. The obvious fallacy in this reasoning lies in the fact that not all swinging doors, which are not equipped with checking or retarding devices, are dangerous if used with reasonable care. There may, of course, be swinging doors which, because of their size, weight or location, can be dangerous to those who use them unless automatically checked or retarded. But, that was not shown to be the situation in the instant case. And, the plaintiff failed to offer any evidence that the lightweight doors, as maintained by the defendant, were a dangerous instrumentality unless equipped with a check or retarding device. To permit a finding of negligence in such circumstances would be tantamount to requiring mechanical stops or retarders on all swinging doors used by the public.

The judgment is reversed and is here entered for the defendant.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Without intending any disrespect I cannot help feeling that the description of the mechanical devices involved in this case, as given in the Majority Opinion, sounds like the description of a complicated invention in a Rube Goldberg cartoon, to wit: "The Bommer type hinge is equipped with two spring barrels one of which is on either side of the door. The barrel springs are adjusted to equalize their tension so that the door stays on the transverse center line of the doorway when in its normal closed position. When the door is pushed open the motion winds the one spring, thereby increasing its tension; and, concomitantly, the opposite spring is unwound which reduces its tension. As the door is released from an open position, the tension of the tightened spring causes the door to swing back which it ordinarily does to a point beyond the line of its normal closed position, thus creating a tension in the opposite spring which, in turn, causes the door to swing back the other way. During the diminishing progress of the oscillation, the tension in the two springs becomes equalized and the door comes to rest at its closed position where it remains until pushed open again."

As the Majority Opinion progresses, its logic oscillates from the transverse center line of precedent until the tension of the facts is overcome by the concomitant force of spring barrel technicality and finally the decision comes to rest in a closed position with the plaintiff outside the doors of the courthouse and the right to a jury trial lying prostrate beside her.

On January 31, 1950, the plaintiff Jane McAdoo walked into the Autenreith's Dollar Store at 3605

Forbes Street in Pittsburgh for the purpose of purchasing commodities on sale in that establishment. The store's entrance is made up of double swinging doors hung from hinges fastened to either side of the portal frame. Folding back the right door and crossing the threshold, Mrs. McAdoo moved to the left toward a counter displaying wares of interest to her. Another customer on his way out of the store proceeded through the other half of the swinging doors (the one to her left). Yielding to push, his door went to the limit of its outward arc and then swung back, passed dead center and continued on *into* the store striking the plaintiff who was now in its direct path. The force of the backswing was such that, hitting the plaintiff on the right leg, it catapulted her forward seven feet against a counter, ripping off a fingernail, throwing her to the floor and inflicting other injuries not necessary to describe here.

The jury, after hearing the case, returned a verdict for the plaintiff in the amount of $4,766.00. The defendant store appealed and this Court is entering judgment notwithstanding the verdict. I do not believe that in law and justice the nullification of this jury verdict may be justified. As recently as January, 1953, this Court said in the case of *Jerominski v. Fowler,* 372 Pa. 291, 295: "A store owner who invites the public to do business on his premises, although not an insurer of the safety of the invitee, has the affirmative duty of maintaining his premises in a reasonably safe condition for the contemplated use thereof and for the purpose for which the invitation was extended, or to give warning of any failure to maintain them in that condition."

Were the doors in the defendant's store maintained in a reasonably safe condition? That was a question for the jury to decide. In the same *Jerominski* case

we said: "It was for the jury to determine whether the care required under the circumstances was met by the defendant."

The Majority Opinion bases much of its decision on the proposition that the plaintiff did not offer testimony to show that the defendant store's doors with their devices "were inadequate, out of adjustment, improper or defective." There was no such burden on the plaintiff. A person who goes into a store to help enrich the store's owner has the right to expect that after entering the establishment, the door will not violently return to strike him down like an avenging fury. Once the plaintiff in this case showed that she was free from contributory negligence and that she was injured in a manner which argued that if the store owner had exercised due care the accident would not ordinarily have occurred, there fell upon the defendant proprietor a duty to show that he did meet his responsibility of due care under the circumstances. Whether he successfully carried that burden was for the jury to decide—not the Court.

In *House v. Schreiber*, 168 Pa. Superior Ct. 621, the plaintiffs suffered property damage when water seeped through the ceiling of their business place. The floor above was occupied by a manufacturing concern. The plaintiffs did not affirmatively show that the defendant was guilty of negligence, but the verdict returned for the plaintiffs was affirmed by the Superior Court, which said that the "inference of negligence clearly arises from the circumstances which were established, and plaintiffs were not required to show defendant's negligence by direct evidence." The defendant contended in that case that the plaintiffs' damages could have resulted from other water pipes in the building, but the Superior Court emphasized: "The law does not require the elimination of every possible cause other

than the cause on which plaintiffs rely, but only such, if any, as fairly arise from the evidence. [citing cases] It is not necessary for a plaintiff to exclude everything which the ingenuity of counsel may suggest."

The Majority Opinion here says: "This failure of proof on the part of the plaintiff is the more significant in the light of the testimony of the expert called by the defendant who stated without contradiction that the Bommer type of hinge is the standard hinge used in some super markets, five and ten cent stores and moving picture theatres where lightweight doors are installed on wooden jambs such as in the entrance to the defendant's store." The Majority then goes on to say that the Bommer type of hinge is used "in and about Pittsburgh in ninety percent of the stores like the defendant's." How about the other ten percent? It is within the realm of possibility that the other ten percent refuse to use the Bommer hinge because it is capable of doing what it did in this case.

The hinge expert for the defendant testified that the performance of the Bommer hinge is affected by season and weather. In one part of his testimony this expert said that a door hung on this type of hinge "wouldn't go past more than 30 degrees of its 90 degree travel." Later he said that without a broken spring it would be impossible for the door "to go in more than *45 degrees.* It would have to be an awfully cold day."* Does this mean that a patron before entering a store must consult the Zodiac and a thermometer to ascertain whether a door will continue beyond the limit of its normal backward arc to pursue the patron and strike him down? Furthermore, there is no proof that the spring was *not* broken, a possibility which the expert acknowledged could convert the door from an innocuous portal into a battering ram. The

---

* Italics throughout, mine.

expert testified that he first saw the hinge on April 17, 1951. The accident happened on January 31, 1950. In the sixteen months which passed between the date of the accident and the date of inspection the hinge could have been repaired many times.

The Majority says that "The question for decision, therefore, is whether the entrance doors provided by the defendant were reasonably safe for their intended purpose when used with ordinary care," and then adds: "The question is not, as the plaintiff assumes, whether the proximate cause of the plaintiff's injury was the defendant's failure to equip the doors with checks or retarding devices that would stop the backward swing of the door instanter on the line of its normal position when closed." But how is the plaintiff to show whether the doors were reasonably safe? Reasonable safety is an abstract proposition that cannot be decided in a vacuum. There must be some objective application of the doctrine and one of the objectivities submitted by the plaintiff is that the doors were not reasonably safe because they were not equipped with checks or retarding devices which would stop the backward swing at dead center. It must be admitted that if the doors came to a rest parallel with the threshold the accident could not have happened. The defendant's expert admitted that the offending door did travel beyond the sill on the return swing and did penetrate into the building. Was it negligence on the part of the defendant store to allow the door to swing in that manner? That was the question for the jury to decide, and that is the question this Court has taken from the jury, thus depriving the plaintiff of the right to have a factual question passed upon by the tribunal guaranteed to her by the law of the land.

The Majority Opinion says: "In the instant case there is not a scintilla of evidence that the defendant's

swinging doors deviated in any way from ordinary and customary usage. . . ." But that is not the test of reasonable care. The question is not whether the defendant's doors were like other doors, but whether *they* were safe on January 31, 1950. Other stores could have had similar defective doors equipped with defective hinges but by the grace of God have not injured other customers—but that fact would not make the defendant's doors safe. And then how is it to be known that the doors in other stores have not also knocked down customers? There is no evidence in the case from which the Majority can draw any such conclusion even if it could surmount the barrier of *res inter alios acta.*

The Majority Opinion says that "the deficient evidentiary situation in the instant case is *strikingly similar* to that disclosed in Miller v. Republic Chemical Company, 251 Pa. 593." To compare the facts in the *Miller* case with the facts in the instant case is like comparing the doors of a blast furnace with the doors of a doll house. They both come within the genus of doors but they are as dissimilar as A and Z. The *Miller* case had to do with a massive mill crane, heavy machinery and gondola railroad cars. The present case has to do with the doors to a 25-cent-and-dollar-store. While it is true that principles are immutable regardless of circumstances, it is still true that the reasonable care required in using a crowbar to move a railroad tie is somewhat different from that required to dislodge a wedged chestnut.

The law books have recorded (in various parts of the United States) cases in which plaintiffs recovered verdicts because the checks and retarding devices on swinging doors were defective. The plaintiff thus properly contends that if recovery is permitted because a safety device is defective, certainly recovery should be allowed where the safety device is completely miss-

ing. The Majority rejects this argument as fallacious saying that "not all swinging doors, which are not equipped with checking or retarding devices, are dangerous if used with reasonable care." But the plaintiff here says that the culpable door was so hung and so hinged that it did not function as a safe door.

I will not attempt to analyze all the out-of-State cases cited and quoted from by the Majority. They may be persuasive to the Majority but they are not controlling in Pennsylvania. Nor am I at all convinced that the reasoning employed in those cases is always logical or that it even represents fairness and justice under law. For instance, in the New York case of *White v. Board of Education of City of New York*, 249 App. Div. 520, a five-year old child was injured when a swinging door (without checking or retarding devices) closed on her finger. The Court there admitted that "the accident probably could not have happened had there been a stop." In spite of that startling admission so casually stated, the Court then went on to say: "For untold generations, school children have been passing without accident through doors not equipped with stops." How did the Court know that for untold generations school children had been passing *without accident* through unchecked doors? Where an appellate court decides, rightly or wrongly, that no recovery will be permitted in a given set of circumstances, most lawyers stop bringing actions based on a situation of that character even though they may not agree that the standard adopted by the appellate court is correct. Thus, it does not follow that simply because a certain type of accident does not appear in litigation before appellate courts that that kind of mishap is not actually happening. For instance, only recently we decided that where a person is injured by a flying missile from a railroad train he does not

need to show negligence on the part of the railroad. Yet for forty years the law (because of *Bradley v. L. S. & M. S. Rwy. Co.,* 238 Pa. 315), held that such an untoward event did not require the railroad company to exculpate itself from presumed negligence. We finally repudiated the *Bradley* case. In a Concurring Opinion I said that the *Bradley* case "for many decades lay across the track of remedial justice like a steel and concrete barrier. No one can estimate the number of lawsuits that were either dismissed or never even begun because of the apparently insurmountable obstacle built up by that decision."* Has the time not come to disavow a doctrine that sees no legal wrong in a situation which permits the crushing and mangling of fingers of five-year-old school tots?

The Majority finally dismisses the plaintiff's case with the assertion that "To permit a finding of negligence in such circumstances would be tantamount to requiring mechanical stops or retarders on all swinging doors used by the public." This assertion suggests that the decision is based not on the facts of this case but upon a fear as to what the result of this decision may be in other cases. It is our duty to decide one case at a time. We have no responsibility as to what should be done on "all swinging doors used by the public." If somebody is injured by a swinging door without a stopping or retarding device we will consider that case when it comes before us, but I object to founding a present decision on facts, condition, circumstances and events hypothetically scheduled to occur in a future which may or may not ever arrive.

---

* *Mack v. Reading Co.,* 377 Pa. 135, 142.