Laura LARKIN, Plaintiff,

v.

MAY DEPARTMENT STORES, a corporation, Defendant.

Civ. A. No. 11668.

United States District Court
W. D. Pennsylvania.

April 3, 1957.

James P. McArdle, Pittsburgh, Pa., for plaintiff.

V. C. Short, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

On February 6, 1957, plaintiff having completed the presentation of her evidence to a jury, this court granted defendant's motion for an involuntary dismissal, pursuant to the provisions of Rule 41(b), Fed.Rules Civ.Proc., 28 U.S. C.A.

This is a diversity case. The negligence law of Pennsylvania applies. The court desires to set forth the reasons why the dismissal was entered.

■ The involuntary dismissal under Rule 41(b) is the equivalent of a directed verdict. Federal Deposit Ins. Corporation v. Mason, 3 Cir., 115 F.2d 548, 551; Whitley v. Powell, 4 Cir., 159 F.2d 625. Therefore, in giving consideration to the motion during the trial and now, this court is concerned solely with whether the evidence on behalf of the plaintiff, together with the reasonable inferences to be drawn therefrom, considered in the light most favorable to her, made out a

case for submission to the jury. My view is that the plaintiff failed to show an issue for the jury.

The Supreme Court in Gunning v. Cooley, 281 U.S. 90, at page 94, 50 S.Ct. 231, 233, 74 L.Ed. 720, announced the applicable rule:

"A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' "

On July 18, 1952, plaintiff was injured when she fell on leaving Kaufmann's Department Store in the City of Pittsburgh. Plaintiff was in the store as a business invitee. It was about noon. She walked toward the Smithfield Street exit and started through the revolving door nearest Fifth Avenue. Plaintiff is a woman five feet eleven inches tall and at the time weighed two hundred pounds. She was then 73 years of age, and had been retired for some ten years. Plaintiff's testimony was that she started through the door with her hand on the bar; that the door swung or revolved too fast as she went through it, so that the panel behind her struck her on the back, propelling her to the floor. She fell upon her left hip. While lying there, she looked over her right shoulder and noticed that the door continued to revolve some *"three, four or five times."* (Emphasis supplied.) No one else came in or out of that particular door during the time she was going out. A crowd soon assembled and plaintiff was then taken to the first aid room in the store and later to a hospital. She received a broken hip and was hospitalized until December 24, 1952, and there is no doubt but that she is permanently disabled.

The items of negligence alleged in the complaint were, in general, that the defendant permitted a governor or brake device which controls the speed of the door to become defective; that it failed to make an inspection of the door in question; that defendant failed to make such an inspection of the particular door in question as would have disclosed the old, worn out and defective condition of the door; that it failed to make the necessary repairs to the door; and that by the defendant's failure to do so, a dangerous and hazardous condition was permitted to exist.

At the pretrial, the court endeavored to have plaintiff's counsel state the negligence he proposed to prove. He responded: "We say that the door was defective,—" "We will show that the felt pads on the door—I mean that the felt pads were not extended so as to come in contact with the shell of the door, and that the door revolved too fast." Plaintiff's evidence at the trial, however, failed to show any defect whatsoever in the door. Plaintiff herself was unable to show any defective condition in the padding or weather stripping of the door panels. Plaintiff's testimony was that she was the only person present at the time of the accident; that no one made any examination or inspection of the door at the time the accident occurred.

The door in question is seven feet in diameter and six feet eleven and one-quarter inches in height. The door consisted of four panels, each panel containing three weather strips at the top, sides and bottom thereof, or a total of twelve strips in all.

Plaintiff called as a witness, one James D. Pitcairn. This witness qualified as an expert on the construction and maintenance of revolving doors. He is a representative of the International Steel Company and has been familiar with Kaufmann's doors since 1922. His company regularly inspects these doors. Inspections of this particular door were made on July 5, 1951, July 30, 1951 and February 28, 1952. The witness stated that the revolving door and the mechanical speed control thereon were of the type in general use in similar institutions. He

said that in the routine operation of a revolving door, there would be no braking or slowing by the control mechanism until the speed of the door reached twelve to fourteen rpm's. The speed of the door up to that point was not dangerous and in any event, would be controlled by the padding or weather stripping at the sides and bottom of the panels. He also stated that at least 92% of the revolving doors in use had no mechanical braking controls and that it was good practice in the design and maintenance of revolving doors to control the speed by the air lock, which results when the weather stripping comes in contact with the cylinder in which the panels revolve, the felt pads or padding on the edges of the panels acting as friction, retarding the movement of the door. The witness stated that until the speed of the door reached at least twelve rpm's it could not be considered dangerous or in any way defective.

Plaintiff offered the witness Douglas as an expert on revolving doors. He failed to qualify as such. He had, from his experience as a builder and as a customer of the store, a general familiarity with the Kaufmann doors. However, on the issue of negligence he could only say that while going through this particular door in early June of '52, he could see daylight. Plaintiff offered also a witness, T. B. Garman, an architect. He had made no inspection of this particular door. His testimony was, as an architect, that a normal revolving door should revolve but a quarter of a turn after pressure of a person passing through it is removed. When asked what the purpose of the air lock stripping was, the witness said: "My impression of that is to slow the door down."

In summary, then, plaintiff herself initiated the movement of the door. There is no way, under the evidence, to measure the amount of pressure she applied to the door, nor the speed at which it revolved while she was passing through it, but it is noted again that she weighed two hundred pounds and was five feet eleven inches tall. Negligence, if any, in this case, must be inferred from plaintiff's own statement as to the manner in which the door operated at the time she received her injury.

Plaintiff's counsel has cited several decisions on the issues in this case. Jerominski v. Fowler, Dick & Walker, 372 Pa. 291, at page 295, 93 A.2d 433, 435, which defines the duty of a store owner, as follows:

> "* * * A store owner who invites the public to do business on his premises, although not an insurer of the safety of the invitee, has the affirmative duty of maintaining his premises in a reasonably safe condition for the contemplated use thereof and for the purpose for which the invitation was extended, or to give warning of any failure to maintain them in that condition."

On the general subject under discussion, the language of Chief Justice Jones in McAdoo v. Autenreith's Dollar Stores, 379 Pa. 387, at page 391, 109 A.2d 156, at page 158 is appropriate:

> "The plaintiff's theory of liability is that the proximate cause of her injury was the defendant's negligence in maintaining swinging doors on spring hinges without retarding or stopping devices so that the doors, after being pushed open, could not swing back with sufficient force to strike and throw a person to the floor. The plaintiff offered no testimony to show that the doors, hinges or springs were inadequate, improper, out of adjustment or defective in any way whereby their use was rendered unsafe."

Plaintiff's counsel has cited several other cases which he says are favorable to his contention that a jury case was made out. However, an examination of the decisions cited indicates that in all of them defects in the revolving doors were shown by the evidence. For instance, Eyerly v. Baker, 168 Md. 599, 178 A. 691 is a Maryland case in which the court held that the jury verdict for the plaintiff was conclusive of negligence.

The evidence by the plaintiff showed that the rubber along the vertical edges of the door leaves was worn. Also other witnesses testified that the rubber and felt on the door was very much worn. Other cases to the same effect are: Hansen v. Henrici's Inc., 319 Ill.App. 458, 49 N.E.2d 737, where the evidence was that the flanges or strips at the bottom of the door were frayed and that there was a space of about an inch between the flanges and the floor; and the flanges on the side of the door were bent and curved; and the door revolved very fast; and that the flanges did not touch the wall about half way up from the floor; Nersiff v. Worcester County Savings and Trust, Inc., 264 Mass. 228, 162 N.E. 349, where there was evidence that the friction strips if used long enough would not come in contact with the sides of the door, and that there were no repairs or readjustments to the friction strips made from 1921 to February 1, 1923, the date of the accident; and Sorenson v. Emery, Bird, Thayer Dry Goods Co., 238 Mo.App. 1241, 187 S.W.2d 480, where there was testimony that indicated that the air lock strips were "worn and curled up."

During the oral discussion on whether the motion for involuntary dismissal should be granted, plaintiff's counsel contended that the court was apparently placing too much reliance on the witness Pitcairn. Plaintiff's counsel indicated that the court was unfamiliar with the rule announced in Johnson v. Baltimore & Ohio Railroad Co., 3 Cir., 208 F.2d 633, to the effect that a plaintiff is not bound by everything said by each and every witness called. This court understands the rule mentioned. However, the shortage of proof in plaintiff's case is that neither she nor her witnesses could show any defect whatsoever in any of the parts making up the door either the edges of the panels, the padding, weather stripping or any of the parts, including the mechanical speed control. The architect, Mr. Garman, called by the plaintiff, stated that the particular man in this "county" to whom he would go as a specialist on revolving doors was the witness, James D. Pitcairn.

Mr. Pitcairn testified affirmatively that the revolving door was functioning properly and had no defects in it on February 28, 1952, at the time of his last inspection. Thus, unless negligence can be found from the statement of the plaintiff that as she lay on the floor the door revolved some three, four or five times (it is noted that she was simply giving an estimate and was not sure of the exact number of revolutions), plus the testimony of Mr. Douglas that he saw daylight on one occasion, and plus the statement of the architect Garman that his "impression" was that a door should only make a half or quarter turn after pressure is released, there is insufficient testimony to go to the jury.

■ With regard to plaintiff's counsel's contention as to the principle of law that a plaintiff is not bound by what is said by each and every one of her witnesses, the rule to be applied in the instant case is the same as that announced by Judge Goodrich in Warlich v. Miller, 3 Cir., 141 F.2d 168, 170, a diversity case, where he says:

"* * * The plaintiff of course had the burden of proving negligence by the defendant. The Pennsylvania rule is that a plaintiff's case is entitled to go to the jury if his testimony makes out a case sufficient to sustain a verdict in his favor, although the plaintiff introduces further evidence, through another witness, which is conflicting on the issue of defendant's negligence. [Citing cases.]"

■ It is my view that plaintiff at best has only shown a scintilla of evidence. She simply failed to prove negligence under Pennsylvania law. Taking the combined testimony of herself and her witnesses, there is no indication that the door was not maintained in a reasonably safe and proper manner. There was absolutely no defect shown in the door, nor is there any evidence in plaintiff's case that defendant failed

to discharge its legal duty to the plaintiff on the day in question.

As was said in McAdoo v. Autenreith's Dollar Stores, supra, 379 Pa. at page 391, 109 A.2d at page 158, plaintiff presented

" * * * no proof from which defendant's causative negligence could be inferred save for the happening of the accident itself which, of course, is legally insufficient to establish liability. A possessor of land is not an insurer of the safety of an invitee; the standard of conduct required is merely reasonable care * * *."

This opinion is regarded as comprising the findings of fact and conclusions of law in accordance with the provisions of Rule 52(a).