Laura LARKIN, Appellant,

v.

The MAY DEPARTMENT STORES COMPANY, Successors by Consolidation to Kaufmann's Department Stores, Inc., a Corporation.

No. 12213.

United States Court of Appeals Third Circuit.

Argued Nov. 18, 1957.

Decided Jan. 7, 1958.

James P. McArdle, Pittsburgh, Pa., (James E. McLaughlin, Pittsburgh, Pa., on the brief), for appellant.

V. C. Short, Pittsburgh, Pa., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

█ The plaintiff, Larkin, sued The May Department Stores Company of Pittsburgh (May), successor by consolidation to Kaufmann Department Stores, Inc. (Kaufmann), alleging that she was injured seriously by a revolving door in the Kaufmann store in Pitts-

burgh because the door was negligently maintained by Kaufmann and was not in proper working order. Jurisdiction is based on diversity. The law of Pennsylvania governs.

About noon on July 18, 1952, Miss Larkin, who was then seventy-three years old, and five feet, eleven inches in height and weighed about two hundred pounds, left Kaufmann's Department Store by its Smithfield Street exit, through the revolving door nearest Fifth Avenue. She testified that she started through the door with her hand or hands on the bar on the door at about the heighth of her waist; that the door revolved too fast as she went through it and continued to revolve after she had fallen, brushing her body "12 or 16 times" before it stopped. She stated that no one came through the door, or was in the door at the time of the occurrence of the accident.

█ An expert witness, Pitcairn, subpoenaed and called by Larkin, but in reality a witness for May, testified that he was a representative of International Steel Company, a division of which had manufactured the doors in use at Kaufmann's and that he was familiar with the construction and maintenance of revolving doors and had been familiar with the Kaufmann doors since 1922; and that his company or its agents had inspected these doors and this particular door on July 5 and July 30, 1951, and on February 28, 1952. He stated that the door contained at its top a control or braking mechanism but that this would not become effective until the speed of the door reached 12 to 14 revolutions per minute but that some control of the speed of a door such as this should have been effected by the padding or weatherstripping at the sides and bottoms of the panels, creating an air-lock as the segments of the door revolved. His testimony in general was to the effect that this particular revolving door was in a safe condition.[1]

---

1. In view of our decision in Johnson v. Baltimore & O. R. Co., 1953, 208 F.2d 633, rehearing denied 1954, it is clear that Larkin was not bound by all of Pitcairn's testimony. Cf. Rule 43(b) Fed. R.Civ.Proc., 28 U.S.C.

Larkin also called as a witness Douglas, an individual engaged in a general construction business, and attempted to have the court accept him as an expert. The court did not deem him qualified. Douglas had had experience not only with revolving doors in general but was somewhat familiar with this particular door in June 1952. He stated that at that time he had seen daylight between the door's air-lock stripping and its semicircular metallic surface. These were the elements designed to create an air-lock as the segments of the door revolved to slow its motion. We refer in this connection to Pitcairn's testimony, set out in the preceding paragraph of this opinion. From Douglas' testimony the jury would have been entitled to infer that there were breakages in the air-lock- or weather-stripping and that the braking mechanism of the door operated in a defective manner because of this deficiency.

Larkin also offered as an expert witness Garman, a registered architect, to testify on the issue of how air-locking devices worked. He had not examined the door in question. It is not clear whether the court accepted or rejected him as an expert.

At the close of Larkin's testimony May moved for an involuntary dismissal of the action as provided by Rule 41(b), Fed.R.Civ.Proc., 28 U.S.C. The court dismissed the action with prejudice. 153 F.Supp. 747. The appeal followed. It appears from the opinion of the court that the basis of the dismissal was that on the facts and the law Larkin had shown no right to relief.

 We think that both Douglas and Garman qualified as experts. A re-

volving door is not such a complicated mechanism as to require those who testify concerning it to show special knowledge beyond that ordinarily possessed by a contractor or an architect accustomed to installing such doors or seeing to their installation. We are also of the view that reasonable latitude must be permitted by a trial court to the expert in giving his testimony and that the court below failed to do this. But quite aside from the foregoing on the present record there was sufficient evidence to go to the jury on the issue of negligent maintenance of the door and that therefore May should have been put to its proof.[2]

 In this connection we quote with approval the language employed in Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 116, 49 A.L.R.2d 924: "It is well settled law that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact; and that negligence and what is the proximate cause of damages are questions of fact to be properly submitted to and determined by jurors from a consideration of all the attending facts and circumstances. On a motion for a directed verdict, it is the duty of the court to accept as true all the facts which the evidence tends to prove, and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury."

The judgment of the court below will be reversed.

2. Some question was raised at the argument in this court and, apparently, in the court below as to whether the evidence which Larkin stated, at a pretrial conference, she would offer at the trial differed substantially from that actually presented at the trial, in respect to the defective condition of the door. It was not made clear at argument before us as to what May had in mind in this re-

spect but we can perceive no substantial difference in what Larkin said she would prove at the trial and the evidence which was presented. In any event no limiting order was made in accordance with Rule 16, Fed.Rules Civ.Proc., 28 U.S.C. See the transcript of the official notes of the pretrial conference, February 1, 1956.