HARRY J. DWORKIN, Plaintiff and Appellee, *v.* SAN JUAN INTERCONTINENTAL HOTEL CORP., Defendant and Appellant.

No. R-64-56.     Decided December 18, 1964.

*Rivera Zayas, Rivera Cestero & Rúa,* and *Víctor Rodón Elizalde* for appellant. *F. Fernández Cuyar* and *Amancio Arias Cestero* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

"On February 12, 1959, about 10:30 a.m., plaintiff while being a guest of defendant, suffered an accident as a result of which he injured his right hand." This is the opening paragraph of the complaint filed in this action. The odd

version as to how the accident happened is stated in the findings of facts of the trial court which we copy below:

"In February 1959, the 1932 class of the aforesaid University decided to hold a post-graduate legal seminary in this city of San Juan, and all the members of the aforementioned class, upon arriving at Puerto Rico, registered at the San Juan Intercontinental Hotel owned by the defendant enterprise, where plaintiff and his wife occupied Room 904.

"Said room was located at the end of a long hall, at the southeastern corner of the hotel and had a door which led from the hall to the room, and another which gave access from the room to a terrace.

"For reasons which are not clearly stated in the evidence, there was a draft in said hall which sometimes became strong and at other times mild.

"On the evening of February 12, 1959, around 10:30 of said night, plaintiff and his wife returned to their room after having attended a session or meeting of the legal seminary held at the hotel. When plaintiff reached the door to his room he introduced the key in the keyhole with his right hand and opened the door, pushing it with his left hand until it was half-way opened, he then removed the key from the keyhole and when he was about to enter the room and, *on account of a sudden strong current of air, the door shut violently trapping the right hand of plaintiff against the door frame and causing serious injuries to the index and middle fingers of his right hand,* with severe hemorrhages under the nails of both fingers."

It was further established that the door which caught the two fingers of plaintiff's right hand was not equipped with any device or instrument to control or delay its movement when closing.

On the basis of such findings it was concluded that it was precisely the lack of such regulating device which caused the injuries mentioned, inasmuch as, under the conditions existing in the hall leading to the bedroom occupied by plaintiff, a reasonable degree of care on the part of the hotel enterprise required that such precaution should have

been taken. Consequently, judgment was rendered ordering defendant to pay to plaintiff the amount of $3,045 which includes $2,000 for income the plaintiff failed to receive and $45 for medicine expenses.

We decided to review the judgment.

■ A slight examination of the conclusion of law which gave rise to the judgment will reveal that the liability laid on the defendant is based on its alleged lack of precaution. We have repeatedly recognized such criterion as a basis for extracontractual responsibility. *Molina Rodríguez v. Caribe Motors Corp.*, 90 P.R.R. 448 (1964); *Pabón Escabí v. Axtmayer*, 90 P.R.R. 20 (1964); *Cruz Costales v. Commonwealth*, 89 P.R.R. 102 (1963); *Weber v. Mejías*, 85 P.R.R. 72, 75–76 (1962); *Ortiz v. Presbyterian Hospital*, 83 P.R.R. 298 (1961); *Baralt v. Commonwealth*, 83 P.R.R. 268, 274–75 (1961). Nevertheless, that does not mean that a person is under obligation to foresee all possible risks that may conceivably be involved in a particular situation, because it would then practically become an absolute responsibility, similar to that of an insurer.[1] In the case of *Hernández v. The Capital*, 81 P.R.R. 998, 1005 (1960), we stated the same concept in the following words: "The duty of foreseeability does not extend to all the hazards imaginable which could conceivably threaten the . . . security but to those which are likely to happen and which can be anticipated by a prudent person." See, also, *Lugo Pérez v. Santo Asilo de Damas*, 89 P.R.R. 242 (1963); and Harper and James, The Law of Torts § 20.5 (1956 ed.); Prosser, Law of Torts 252 *et seq.* (1955 2d ed.).

■ The decisions of United States courts regarding the specific point of the need to install retarding or stopping

---

[1] Specifically, we have held that an innkeeper is not an insurer of the safety of his guests and its duty extends only to the exercise of reasonable care for their protection and safety. *Pabón Escabí v. Axtmayer*, 90 P.R.R. 20 (1964); *Goose v. Hilton Hotels*, 79 P.R.R. 494 (1956).

devices on doors to prevent injuries to invitees, patrons, guests, or third parties are scarce. In most cases they deal with swinging doors which, because of their own nature, require special precautions which it is not reasonable to require in the case of regular doors, *Brown* v. *Lutzky*, 154 A.2d 125 (D.C. 1959); *McAdoo* v. *Autenreith's Dollar Stores*, 109 A.2d 156 (Pa. 1954); *Sockwell* v. *Lucas & Jenkins*, 32 S.E.2d 201 (Ga. 1944); *Dolan* v. *Growers Outlet*, 26 A.2d 788 (Conn. 1942), or with situations where there is an intervening cause through the performance of a negligent act,[2] *Broyler* v. *Speer*, 51 A.2d 391 (Pa. 1947); *Boyle* v. *Neisner Bros.*, 87 S.W.2d 227 (Mo. 1935); *Dolan* v. *Callender, McAuslan & Troup Co.*, 58 Atl. 655 (R.I. 1904). However, it can be deduced that such requisite is not favored. In *Jacob* v. *City of Pittsburgh*, 198 Atl. 639 (Pa. 1938), a steel door leading into the shower room from the swimming pool caught a finger of a minor when it was slammed shut by boys who had entered before him. Upon deciding that no negligence appeared, it was stated that a stopping device would, of course, have obviated the danger, but the risk of harm was so small as to make it unreasonable to require that all doors be thus equipped. A similar view was expressed in *White* v. *Board of Education of City of New York*, 293 N.Y.S. 70 (1937), in which a claim was based on the absence of a door check on the classroom door. It was asserted that the accident probably could not have happened had there been a stop, but the mere happening of the accident did not indicate that it should have been anticipated, and ends by saying that "For untold generations, school children have been passing without accident through doors not equipped with stops." *Ten Broeck* v. *Deinhardt*, 105 N.Y.S. 59 (1907) states that doors without hooks are not intrinsically dangerous. *Cf. Buzzell* v. *R. H. White Co.*, 107 N.E. 385 (Mass.

---

[2] In Puerto Rican case law, see *Santaella* v. *Licari*, 83 P.R.R. 855 (1961), *cert. denied*, 369 U.S. 852 (1962).

1915), regarding liability for lack of a governing device to control the speed of revolving doors.

Perhaps the most similar situation, and incidentally the most recent one we know of, was considered in *McCallum* v. *Brodsky*, 158 So.2d 589 (Fla. 1963). The complaint charged defendant with the negligent use of a door in their motel, which closed upon a minor's finger, while a guest with his parents, when it was shut by a gust of wind. There was no doorstop on the door, the only device attached to it being a chain fastened to the top of the door to prevent it from striking the exterior wall of the building. The claim was dismissed, citing the cases of *Dolan, Ten Broeck, Jacobs,* and *Sockwell, supra,* for lack of cause of action.

■ In this case it was shown that the entrance door to the room occupied by plaintiff did not have any defect whatsoever, it was levelled and moved efficiently on the door-jamb, and its fittings and hinges were appropriate. It was not established that the concern had been advised of any particular risk involving the presence of drafts in the halls of the different floors of the hotel, and much less of the action of "a sudden draft" or of "irregular gusts of wind through the hall," as described by plaintiff himself. Considering those circumstances together with the ones the trial court found proved and which we copied at the beginning of this opinion, we are not convinced that, applying the test of foreseeability, the situation were of such nature as to require the installation of a governing mechanism to delay the closing of the entrance doors to the bedrooms. It is significant that those giving access to terraces on the outside of the building and which are exposed to the action of the winds which frequently blow around the coast where the hotel is located, are equipped with such governing mechanisms. No doubt this is so because of the reasonable probability that a sudden slamming might create a dangerous situation. But,

as we have already stated, the situation concerning entrance doors is completely different.

In view of the conclusion we have reached that the action does not lie, we are relieved from discussing the other errors assigned.

The judgment rendered by the Superior Court, San Juan Part, on February 13, 1964 will be reversed and the complaint dismissed, with costs, including those incurred in the present review.